FILED & JUDGMENT ENTERED
Christine F. Ramsey

November 9 2026

Clerk, U.S. Bankruptcy Court
Western District of North Carolina

Ashley Austin Edwards
United States Bankruptcy Judge

**UNITED STATES BANKRUPTCY COURT**
**FOR THE WESTERN DISTRICT OF NORTH CAROLINA**
**CHARLOTTE DIVISION**

| | |
|---|---|
| In re:<br><br>**Arbor Construction, LLC**,<br><br>Debtor. | Case No. 24-30226<br>Chapter 7 |
| **A. Burton Shuford, Trustee**,<br><br>Plaintiff,<br><br>v.<br><br>**FTF Lending, LLC**,<br><br>Defendant. | Adv. Proc. No. 26-03013 |

**<u>ORDER GRANTING PLAINTIFF'S MOTION FOR JUDGMENT ON THE PLEADINGS AND GRANTING PLAINTIFF'S MOTION TO DISMISS WITH PREJUDICE</u>**

**THIS MATTER** is before the Court upon review of the Plaintiff's *Motion for Judgment on the Pleadings*, filed on August 17, 2026 [Doc. No. 20] (the "Motion for Judgment on the Pleadings"), and the *Brief of Plaintiff A. Burton Shuford, Trustee for Arbor Construction, LLC in Support of Motion for Judgment on the Pleadings*, filed on September 2, 2026 [Doc. No. 22] (the "Trustee's Pleadings Judgment Brief"). This adversary proceeding commenced when the Plaintiff,

A. Burton Shuford (the "Trustee"), filed a *Complaint* on March 3, 2026 [Doc. No. 1] (the "Complaint") against FTF Lending, LLC ("FTF"). On May 4, 2026, FTF filed an initial *Answer and Defenses* [Doc. No. 7], but later filed an *Amended Answer and Defenses, and Counterclaim* on May 22, 2026 [Doc. No. 9] (the "Answer and Counterclaim"). On June 11, 2026, the Trustee filed a *Motion to Dismiss Counterclaim with Prejudice* [Doc. No. 11] (the "Motion to Dismiss Counterclaim"), which sought dismissal of FTF's counterclaims. On August 7, 2026, the Court entered an *Order Granting Motion to Dismiss Counterclaim* [Doc. No. 17] (the "Dismissal Order"), which granted a dismissal without prejudice and permitted FTF twenty-one (21) days following the entry of the Dismissal Order to amend the counterclaims. *See* Dismissal Order at 11. Thereafter, FTF filed a *Second Amended Counterclaim* on August 28, 2026 [Doc. No. 21] (the "Amended Counterclaim").

On September 4, 2026, FTF filed *FTF Lending, LLC's Response to the Trustee's Motion for Judgment on the Pleadings* [Doc. No. 23]. Four days later, on September 8, 2026, FTF filed *FTF Lending, LLC's Brief in Support of its Response to the Trustee's Motion for Judgment on the Pleadings* [Doc. No. 24] (the "FTF's Pleadings Judgment Brief"). The Court held a hearing on the Trustee's Motion for Judgment on the Pleadings on September 10, 2026 (the "September Hearing"), at which A. Burton Shuford appeared as Plaintiff and Trustee, and G. Wade Leach, III appeared on behalf of FTF.

On September 16, 2026, the Trustee filed a *Motion to Dismiss Second Amended Counterclaim with Prejudice* [Doc. No. 26] (the "Motion to Dismiss Amended Counterclaim"). On September 24, 2026, FTF responded by filing *FTF Lending, LLC's Response to the Trustee's Motion to Dismiss Second Amended Counterclaim with Prejudice* [Doc. No. 28] (the "FTF's Response to the Motion to Dismiss"). On October 7, 2026, the Trustee filed the *Brief of Plaintiff*

*A. Burton Shuford, Trustee for Arbor Construction, LLC in Support of Motion to Dismiss Second Amended Counterclaim of Defendant* [Doc. No. 29] (the "Trustee's Counterclaim Brief"). On October 12, 2026, FTF filed *FTF Lending, LLC's Brief in Support of its Response to the Trustee's Motion to Dismiss Second Amended Counterclaim with Prejudice* [Doc. No. 30] (the "FTF's Counterclaim Brief"). The Court held a hearing on the Trustee's Motion to Dismiss Amended Counterclaim on October 15, 2026 (the "October Hearing"), at which A. Burton Shuford appeared as Plaintiff and Trustee, and G. Wade Leach, III appeared on behalf of FTF. The Court took both the Motion for Judgment on the Pleadings and the Motion to Dismiss Amended Counterclaim under advisement and now renders its opinion.

## I. BACKGROUND AND FACTUAL FINDINGS

1. The Debtor is a North Carolina limited liability company with its principal office in Charlotte, North Carolina. *See* Complaint ¶ 12. The Debtor was primarily engaged in the business of constructing new residential homes in North Carolina and South Carolina. *See* Complaint ¶ 14; Trustee's Pleadings Judgment Br. at 1. Brian Macuga, Sr. was the sole member-manager of the Debtor. *See* Amended Counterclaim ¶ 10. The Debtor claimed ownership of twenty-eight (28) parcels of real property in fee simple in Schedule A/B of the Debtor's Chapter 11 petition, filed on March 12, 2024 [Case No. 24-30226, Doc. No. 1] (the "Petition"). As of March 12, 2024 (the "Petition Date"), some of the Debtor's parcels featured finished residential homes while others remained in various stages of development. *See* Complaint ¶ 15.

2. On or about August 29, 2022, Arbor Land Holdings, LLC ("Arbor Land") acquired title to 1563 Riverview Circle, Fort Lawn, South Carolina 29714 (the "Real Property"), which was described "as Lot 1 on plat recorded August 12, 2022 as Plat Number 117 at Page 58 in the Office of Register of Deeds for Chester County, South Carolina" (the "Chester County Register of

Deeds”).[1] *See* Answer and Counterclaim at 8, Ex. B; Amended Counterclaim ¶ 5; FTF’s Pleadings Judgment Br. at 2. The Real Property was just one of a “series of lots” that Arbor Land purchased “from Howard Strickland, Jr. in August of 2022.” Amended Counterclaim ¶ 9.

3. On or about April 11, 2023, the Debtor obtained a loan from FTF in the amount of three hundred and thirty-four thousand dollars ($334,000.00) to build a residential home on the Real Property (the “2023 Transaction”). *See* Trustee’s Pleadings Judgment Br. at 2, Ex. D; FTF’s Pleadings Judgment Br. at 2, Ex. A. As part of the 2023 Transaction, the Debtor executed a promissory note in favor of FTF on April 11, 2023 (the “Promissory Note”) for three hundred and thirty-four thousand dollars, which was wired from FTF to the Debtor on April 12, 2023 (the “Loan Proceeds”). *See* Amended Counterclaim Ex. D. Also on April 11, 2023, the Debtor executed a mortgage in favor of the FTF, purportedly secured by the Real Property, which was recorded the following day, on April 12, 2023, in Book MB, Volume 1971, Page 62 of the Chester County Register of Deeds (the “Mortgage”). *See* Answer and Counterclaim Ex. A; Amended Counterclaim Ex. F; FTF’s Pleadings Judgment Br. at 2, Exs. A, C; Trustee’s Pleadings Judgment Br. at 2, Ex. D. Additionally, the Debtor recorded a UCC financing statement in favor of FTF for the Real Property in Book MB, Volume 1976, Page 283 of the Chester County Register of Deeds on May 24, 2023 (the “FTF UCC”). Trustee’s Pleadings Judgment Br. at 2.

4. Arbor Land, as opposed to the Debtor, was the recorded owner of the Real Property on April 11, 2023, when the Mortgage was executed, and on April 12, 2023, when the Mortgage was subsequently recorded at the Chester County Register of Deeds. *See* Amended Counterclaim ¶ 19; Trustee’s Pleadings Judgment Br. at 5; FTF’s Pleadings Judgment Br. at 3 (“Due to the misrepresentations of Arbor Construction and Arbor Land, the Real Property was not transferred

---

[1] The Chester County parcel identification number is 158-01-04-092-000. *See* Trustee’s Pleadings Judgment Br. at 2; FTF’s Pleadings Judgment Br. at 2.

to Arbor Construction at the time of the execution of the Mortgage as agreed to by FTF, Arbor Land[,] and Arbor Construction and as evidenced by the Loan and Mortgage."). FTF asserts that the "Real Property was clearly intended to serve as the security for" the Promissory Note. FTF's Pleadings Judgment Br. at 2. FTF further contends that, as part of the 2023 Transaction, the Debtor, FTF, and Arbor Land intended to transfer the Real Property from Arbor Land to the Debtor "simultaneously with the execution of a mortgage on the Real Property in favor of FTF." FTF's Pleadings Judgment Br. at 3; *see also* Answer and Counterclaim at 9; Amended Counterclaim ¶¶ 19, 30. The "Legal Description" section of the Mortgage identifies the Real Property as "being the same property conveyed to [the Debtor] by deed of [Arbor Land] recorded simultaneously herewith in the Register of Deeds for Chester County, South Carolina." Amended Counterclaim Ex. F at 4.

5. Eleven months after the 2023 Transaction, on March 12, 2024, the Debtor filed the Chapter 7 Petition, and the Trustee was designated as trustee for the bankruptcy case. On the Petition Date, the Debtor's Schedule A/B listed the Real Property as an asset of the estate with the Mortgage enumerated in Schedule D as a secured lien attached to the Real Property. Also in the Debtor's Petition, the Summary of Assets and Liabilities for Non-Individuals listed total liabilities of $11,400,493.78, with $9,953,627.53 in secured claims and $1,427,332.05 in nonpriority unsecured claims. *See* Petition at 9. That corresponds to one-hundred and fifty-eight (158) secured creditors listed in Schedule D of the Petition and one hundred and fifteen (115) nonpriority unsecured creditors in Schedule E/F. *See id.* at 24–106.

6. On April 9, 2024, the Trustee filed an *Ex-Parte Motion for Authority to Pay for Title Searches* [Case No. 24-30226, Doc. No. 28] to obtain the Court's approval to conduct title searches on all properties listed in the Debtor's Schedule A/B, including the Real Property. On April 10,

2026, the Court approved the Trustee's request in its *Ex-Parte Order Authorizing Trustee to Pay for Title Searches* [Case No. 24-30226, Doc. No. 29].

7. On April 25, 2024, the Trustee filed an *Application for Authority to Employ Great Neck Realty Company of North Carolina, LLC, Iron Horse Auction Company, Inc., and Iron Horse Properties, LLC, Collectively, as Auctioneers and Real Estate Brokers to Trustee Pursuant to Section 327(a) of the Bankruptcy Code* [Case No. 24-30226, Doc. No. 39] (the "Application to Employ Auctioneers"), which listed, in Exhibit A, the Real Property as a "Completed Residential Unit[]" ready to be auctioned. In total, the Application to Employ Auctioneers sought to auction sixteen (16) "Completed Residential Units" and eleven (11) "Incomplete Residential Units (approx. 70%-90% Complete)." *See* Application to Employ Auctioneers Ex. A at 1–2. On May 16, 2024, the Court's *Order Authorizing Employment of Great Neck Realty Company of North Carolina, LLC, Iron Horse Auction Company, Inc., and Iron Horse Properties, LLC, Collectively, as Auctioneers and Real Estate Brokers to Trustee Pursuant to Section 327(a) of the Bankruptcy Code* [Case No. 24-30226, Doc. No. 49] granted the Trustee's Application to Employ Auctioneers.

8. On May 8, 2024, Arbor Land transferred the Real Property to the Trustee by quit claim deed and recorded the deed in Book 1465, Page 10 of the Chester County Register of Deeds (the "Trustee's Post-Petition Real Property Transfer"). *See* Answer and Counterclaim at 10; Amended Counterclaim ¶ 31, Ex. G.

9. On March 11, 2025, the Trustee filed a *Motion for Approval of Auction Agreement and Approval of Sale of Real Estate at Public Auction Outside of the Ordinary Course of Business Free and Clear of Liens and Interests Pursuant to 11 U.S.C. § 363(b)(1)* [Case No. 24-30226, Doc. No. 142] (the "Motion to Auction the Real Property") in order to sell the Real Property. In the Trustee's Motion to Auction the Real Property, the Trustee indicated that Arbor Land "intended to

transfer the Real Property to the Debtor prior to the Petition Date, but through oversight, failed to do so." Motion to Auction the Real Property at 1. On March 31, 2025, FTF filed a *Limited Objection and Reservation of Rights of FTF Lending, LLC to the Trustee's Motion for Approval of Sale of Assets Free and Clear of Liens* [Case No. 24-30226, Doc. No. 147] (the "FTF's Limited Objection to Sale"), claiming that no "consideration was paid in order to induce Arbor Land to transfer the Real Property to the Trustee" with the deed for the Trustee's Post-Petition Real Property Transfer being "conspicuously silent regarding value or purchase price of the Real Property." FTF's Limited Objection to Sale ¶ 15.

10. On April 15, 2025, the Trustee's *Amendments to Motion for Approval of Auction Agreement and Approval of Sale of Real Estate at Public Auction Outside of the Ordinary Course of Business Free and Clear of Liens and Interests Pursuant to 11 U.S.C. § 363(b)(1)* [Case No. 24-30226, Doc. No. 151] (the "Auction Amendments") added two provisions to the original Motion to Auction the Real Property. The additional provisions dictated that the Real Property would be sold (1) "free and clear of all liens" and (2) "without prejudice to any and all rights that the Trustee or the [Debtor's estate] may have to avoid or set-aside any lien." Auction Amendments at 2. On May 9, 2025, both provisions were adopted in the ensuing *Consent Order Approving Auction Agreement and Authorizing Sale of 1563 Riverview Circle, Fort Lawn, SC at Public Auction Outside of the Ordinary Course of Business Free and Clear of Liens and Interests Pursuant to 11 U.S.C. § 363(b)(1) and 11 U.S.C. § 363(f)(4)* [Case No. 24-30226, Doc. No. 152] (the "Auction Order"), signed by the Trustee, counsel for Howard Strickland, Jr., and FTF.

11. On May 28, 2025, the Court's *Order Confirming Sale and Authorizing Payment of Certain Fees* [Case No. 24-30226, Doc. No. 157] (the "Sale Order") confirmed the auction sale of the Real Property for a total purchase price of three-hundred and twelve thousand, eight hundred

and thirty dollars ($312,830.00), with twenty-five thousand, eight hundred and thirty dollars ($25,830.00) going towards auction fees and the remaining two-hundred and eighty-seven thousand dollars ($287,000.00) to the Debtor's estate.

12. On July 1, 2025, FTF commenced an adversary proceeding against the Trustee, Arbor Land, and the Debtor [Adv. Pro. No. 25-03025] (the "First FTF Adversary Proceeding"), asserting claims of (1) negligent misrepresentation against Arbor Land and the Debtor, (2) fraudulent transfer against all defendants, (3) recovery of a fraudulent transfer against the Trustee, and (4) unjust enrichment against the Trustee. On September 23, 2025, the Court dismissed all four claims in its *Order Granting Motion to Dismiss* [Adv. Proc. No. 25-03025, Doc. No. 16] (the "First FTF Adversary Proceeding Dismissal Order"), and specifically denied FTF's negligent misrepresentation claim for a failure to make particularized allegations of justifiable reliance. First FTF Adversary Proceeding Dismissal Order at 4. On October 7, 2025, FTF moved for reconsideration, which the Court denied in its *Order Denying Plaintiff's Motion to Reconsider*, entered on December 30, 2025 [Adv. Proc. No. 25-03025, Doc. No. 27] (the "First FTF Adversary Proceeding Reconsideration Order"). The First FTF Adversary Proceeding Reconsideration Order held that FTF, as a "a creditor only of" the Debtor, had "not alleged how it is a creditor of Arbor Land, the transferor, or that it had any independent claim against Arbor Land on which the transfer could be voided." First FTF Adversary Proceeding Reconsideration Order at 2.

13. On February 11, 2026, FTF filed suit solely against Arbor Land in Mecklenburg County Superior Court [Case No. 26-CV-008074-590] (the "Mecklenburg County Superior Court Lawsuit"), asserting claims for fraud, breach of contract, and unjust enrichment arising from Arbor Land's failure to convey the Real Property to the Debtor in the 2023 Transaction. *See* Dismissal Order at 3–4. FTF served Arbor Land on March 7, 2026, but Arbor Land failed to answer or

otherwise respond. *See id.* The Mecklenburg County Superior Court entered default against Arbor Land on April 15, 2026, and entered a default judgment on May 8, 2026, awarding FTF $287,000.00 plus pre- and post-judgment interest (the "Mecklenburg County Superior Court Judgment"). *See id.* FTF did not name as a party or serve any notice of the Mecklenburg County Superior Court Lawsuit on the Trustee or the Debtor's estate. *See id.*

14. Over nine months after the Sale Order, on March 3, 2026, the Trustee initiated this adversary proceeding by filing the Complaint, which asserted two claims for relief against FTF. First, the Trustee claims that, in his capacity as trustee of the estate, he was "entitled to a judgment and an order avoiding the FTF Mortgage and the FTF UCC filed against the Debtor pursuant to 11 U.S.C. § 544" because he "took the Real Property [in the Trustee's Post-Petition Real Property Transfer] free from the purported liens of the FTF Mortgage and the FTF UCC as a bona fide purchaser." Complaint ¶¶ 31–32. Assuming the transfer was properly avoided under 11 U.S.C. § 544, the Trustee's second claim for relief goes on to assert that he, on behalf of the estate, "is entitled to recover from [FTF] the property transferred pursuant to the FTF Mortgage and the FTF UCC, or the value of such transfers, pursuant to 11 U.S.C. § 550(a)" because FTF was "the initial transferee of the beneficial interest in the FTF Mortgage." *Id.* ¶¶ 32, 36.

15. In response to the Complaint, FTF filed an Answer and Counterclaim on May 22, 2026, which asserted the defenses of statute of limitations, constructive notice, substantially contemporaneous exchange, and various equitable defenses. Answer and Counterclaim at 6–7. FTF's Answer and Counterclaim also raised counterclaims against the Trustee by alleging the Trustee's Post-Petition Real Property Transfer was a fraudulent transfer pursuant to North Carolina General Statutes § 39-23.5(a) and § 39-23.5(b) and seeking recovery for the alleged fraudulent transfer pursuant to North Carolina General Statutes § 39-23.7 and § 39-23.8. *Id.* at 12–15.

16. On June 11, 2026, the Trustee filed the Motion to Dismiss Counterclaim in response to FTF's Answer and Counterclaim. On August 7, 2026, the Court entered the Dismissal Order, which dismissed FTF's counterclaims without prejudice, in part due to the FTF's "conclusory allegation[s]" that "rest[ed] on bare labels rather than facts." Dismissal Order at 10–11. With respect to the "insider" element of FTF's claim under North Carolina General Statutes § 39-23.5(b), the Dismissal Order specifically identified FTF's failure to "show[] common control or explain[] how any such status held by the Debtor pre-petition applies to the Trustee." *Id.* at 11. While the Dismissal Order permitted FTF twenty-one (21) days following the entry of the Dismissal Order to amend the counterclaims, the Court also warned FTF that "[s]hould an amended counterclaim fail to cure the deficiencies identified above with the requisite factual specificity, dismissal with prejudice may follow." Dismissal Order at 11.

17. On August 28, 2026, FTF timely filed the Amended Counterclaim, which asserted the same three causes of action against the Trustee as FTF's initial Answer and Counterclaim, but included additional factual allegations and minor analytical revisions. The amended first count added an assertion that "FTF suffered damages due to Arbor Land's false representations that it would transfer the Real Property to Arbor Construction" in the 2023 Transaction but later conceded that the "Mortgage is defective because it secures a property that is not in the name of Arbor Construction." Amended Counterclaim ¶ 53. The amended second count emphasized Mr. Brian Macuga's "common ownership" of both the Debtor and Arbor Land, described the Debtor as being in the "business of real estate development[,]" and reiterated that the Mortgage was "defective" due to "Arbor Land's false representations that it would transfer the Real Property to Arbor Construction." *Id.* ¶¶ 60–63, 65. The Defendant did not amend the third count in the Amended Counterclaim. The Amended Counterclaim also included six (6) exhibits created at or around the

time of the 2023 Transaction that were all signed by Tisha S. Macuga, on behalf of the Debtor. *See* Amended Counterclaim Ex. A, B, C, D, E & F (identifying the Affidavit of Non-Occupancy, the Certification of Loan for Business Purposes, the Errors and Omissions Affidavit and Document Re-Execution Agreement, the Promissory Note, the Escrow Agreement, and the Mortgage signed on behalf of Arbor Construction).

18. On September 16, 2026, the Trustee filed the Motion to Dismiss Amended Counterclaim, which the FTF responded to by filing FTF's Response to the Motion to Dismiss on September 24, 2026.

## II. DISCUSSION

19. In the Complaint's first claim for relief, the Trustee asserts that he is authorized to avoid the Mortgage and take the proceeds from the sale of the Real Property free and clear of any liens under 11 U.S.C. § 544(a)(3) because the "Mortgage did not attach to the Real Property pursuant to applicable South Carolina law." Trustee's Pleadings Judgment Br. at 3.[2] The Trustee asserts that the Mortgage did not attach to the Real Property and that the Trustee took the Property free and clear of the Mortgage pursuant to 11 U.S.C. § 544(a) in the Trustee's Post-Petition Real Property Transfer because (1) "The mortgagor of the FTF Mortgage was Arbor Construction,

---

[2] For purposes of determining whether the Trustee is bona fide purchaser pursuant to § 544(a)(3), the Court applies South Carolina law because that is where the Real Property is located. *See Havee v. Belk*, 775 F.2d 1209, 1218 (4th Cir. 1985) (holding that § 544 "gives the Trustee the status of a hypothetical lien creditor in attacking a transfer under a State fraudulent conveyance statute but, while it is the federal law which provides the trustee with his 'strong-arm' power, his exercise of such power and its extent are governed entirely by the applicable state law"); *In re Houston*, 409 B.R. 799, 806 (Bankr. D.S.C. 2009) (applying South Carolina law as "the applicable state law in legal or equitable proceedings" involving a trustee attempting to avoid a lien on a residential home in South Carolina through a § 544(a) action); *Official Comm. of Unsecured Creditors of Taylor-Ramsey Corp. v. Ramsey* (*In re Taylor-Ramsey Corp.*), 458 B.R. 270, 274 (Bankr. M.D.N.C. 2011) ("While it is § 544(a)(1) of the Bankruptcy Code that grants the rights of a hypothetical lien creditor to the trustee, the scope of those rights is determined by applicable state law. . . . In this case, the applicable state law is that of Virginia, where the real property subject to the Deed of Trust is located."). The application of South Carolina state law in the § 544 analysis contrasts with the counterclaims section of this Order, which applies North Carolina state law because FTF alleges North Carolina state law causes of action.

LLC", (2) "At the time the FTF Mortgage was recorded, Arbor Land Holdings, LLC was the record owner of the Real Property", and (3) "The Real Property was conveyed to the Trustee after the filing of the Petition." Trustee's Pleadings Judgment Br. at 3. The Trustee further argues that FTF's "affirmative defenses are insufficient to prevent the entry of judgment" in favor of the Trustee because the defenses of contemporaneous exchange and knowledge of the trustee do not apply to this case, and the statute of limitations does not bar the Trustee's claims. *Id.* at 3–4.

20. Conversely, in FTF's Pleadings Judgment Brief, FTF asserts that the Trustee "is not a true bona fide purchaser because he had constructive notice of FTF's lien due to the recorded Mortgage" and the inclusion of the Real Property in the Debtor's Schedules filed on the Petition Date. FTF's Pleadings Judgment Br. at 1. Therefore, FTF does not believe the Trustee can avoid the Mortgage pursuant to 11 U.S.C. § 544(a). *Id.* FTF argues that "[i]t is self-evident from the Mortgage and the Debtor's Schedules, that the Debtor believed the Real Property had been transferred, as detailed in the Mortgage, from Arbor Land to the Debtor, pre-petition, and that it remained encumbered by the Mortgage." FTF's Pleadings Judgment Br. at 4. Additionally, FTF seeks "an equitable lien under South Carolina Law," to which the Trustee responded at the September Hearing that "equity will not rescue a litigant from its own sloppy business practices." FTF's Pleadings Judgment Br. at 1–2; Hr'g Tr., Sept. 10, 2026. Lastly, in FTF's Answer and Counterclaim, FTF asserts a variety of boiler-plate defenses including statute of limitations and contemporaneous exchange as will be discussed herein. Answer and Counterclaim at 6.

21. After FTF filed its Answer and Counterclaim but before FTF timely filed the Amended Counterclaim, the Trustee filed the Motion for Judgment on the Pleadings on August 17, 2026. The Trustee's Motion for Judgment on the Pleadings asserts that it is an appropriate time for the Court to enter a judgment on the pleadings because "no material facts are disputed and the

movant is entitled to judgment as a matter of law." Trustee's Pleadings Judgement Br. at 3 (citing *Voss v. Pujdak* (*In re Pujdak*), 462 B.R. 560, 577–78 (Bankr. D.S.C. 2011).

22. A party may move for a judgment on the pleadings "[a]fter the pleadings are closed—but early enough not to delay trial." FED. R. CIV. P. 12(c). When ruling on a judgment on the pleadings, a "court looks only at the pleadings and determines [if] there is no issue as to a material fact and only matters of law remain." *Sours v. Sours* (*In re Sours*), 350 B.R. 261, 265 (Bankr. E.D. Va. 2006) (quoting *In re Lozada*, 214 B.R. 558, 560 (Bankr. E.D. Va. 1997), *subsequently aff'd*, 176 F.3d 475 (4th Cir. 1999)). A court "must base its decision solely on information obtained from the pleadings"[3] and "must view the facts presented in the pleadings and the inferences to be drawn therefrom in the light most favorable to the nonmoving party."[4] Thus, the Trustee must "clearly establish[] that no material issue of fact remains to be resolved and that he is entitled to judgment as a matter of law." *Montagano v. Berkshire Life Ins. Co. of Am.*, 805 F. Supp. 3d 670, 674 (D.S.C. 2025) (quoting *Wolfington v. Reconstructive Orthopaedic Assocs. II PC*, 935 F.3d 187, 195 (3d Cir. 2019)).

**A. <u>The Mortgage Did Not Attach to the Real Property.</u>**

23. The Trustee's Motion for Judgment on the Pleadings first argues that the Mortgage did not attach to the Real Property because the Debtor never owned the Real Property. In deciding this issue, the Court looks to South Carolina law because the Real Property is located in Fort Lawn, South Carolina. *See United States v. Crosby*, 11 U.S. 115, 116 (1812) ("The Court entertain no doubt on the subject; and are clearly of opinion that the title to land can be acquired and lost only in the manner prescribed by the law of the place where such land is situate."). Under South

[3] *In re Pujdak* 462 B.R. at 579–80 (quoting *Med–Trans Corp. v. Benton,* 581 F. Supp. 2d 721, 728 (E.D.N.C. 2008)).
[4] *Conner v. Cleveland Cnty.*, 22 F.4th 412, 420 (4th Cir. 2022) (quoting *Pa. Nat'l Mut. Cas. Ins. Co. v. Beach Mart, Inc.*, 932 F.3d 268, 274 (4th Cir. 2019)).

Carolina law, a mortgagor must have a current interest in real property that is capable of being encumbered for a mortgage lien to attach. *See Wood v. Reeves*, 23 S.C. 382, 387 (1885); *Hardin v. Hardin*, 12 S.E. 936, 936–37 (S.C. 1891) ("[A] mortgage of real estate is not a conveyance of any estate whatever, but is simply a contract whereby the mortgagee obtains a lien on the property mortgaged as a security for the payment of a debt."). The Supreme Court of South Carolina clarified this requirement in the case of *Wachovia Bank, N.A. v. Coffey*, where a husband obtained a home equity line of creditor from a lender, secured by the marital home, even though the wife held sole title to the home. *See* 746 S.E.2d 35, 38 (S.C. 2013). The Supreme Court of South Carolina held that Wachovia Bank could not "pursue an action against Wife related to that mortgage" because the lender "failed to verify Husband's interest in the couple's residence." *Id.* Therefore, the lender "never possessed a valid mortgage on the property." *Id.*

24. Similarly, in *Wood v. Reeves*, a father bequeathed an interest in real property to his son as part of a will once the son turned twenty-one (21) years old. 23 S.C. at 384. Before turning twenty-one (21), the cash-strapped son attempted to grant a mortgage on the real property to one of his creditors. *Id.* When the creditor later tried to foreclose on the mortgage, the Supreme Court of South Carolina held that the son "took under the will of his father a mere money interest, which could not be the subject of mortgage." *Id.* at 387. Therefore, "[l]and directed to be sold by a will and the proceeds divided is converted into personalty, money, which certainly cannot be mortgaged." *Id.*

25. Here, South Carolina law dictates that the Mortgage did not attach to the Real Property because the Debtor had had no interest in the Real Property at the time of the 2023 Transaction. The Debtor could not have encumbered the Real Property with the Mortgage in April 2023 because Arbor Land, not the Debtor, was the true and recorded owner of the Real Property

on the date of the 2023 Transaction, April 11, 2023. *See* Trustee's Pleadings Judgment Br. at 2, Ex. D; FTF's Pleadings Judgment Br. at 2, Ex. A. Moreover, neither the Debtor, FTF, nor Arbor Land took any action to correct the alleged mistake–by transferring the Real Property to the Debtor–during the eleven-month period that passed between the 2023 Transaction date (April 11, 2023) and the Petition Date (March 12, 2024). The Real Property was not sold or transferred from Arbor Land at any point between the 2023 Transaction date and the Petition Date. Therefore, the Trustee acquired title to the Real Property unencumbered by the Mortgage through the Trustee's Post-Petition Real Property Transfer because FTF "never possessed a valid mortgage on the property" pursuant to South Carolina law. *Wachovia Bank*, 746 S.E.2d at 38.

**B. <u>Bona Fide Purchaser Pursuant to 11 U.S.C. § 544(a)(3).</u>**

26. The Trustee also argues that the Trustee, "as a bona fide purchaser" under 11 U.S.C. § 544(a)(3), "took title to the Real Property free of the FTF Mortgage." Trustee's Pleadings Br. at 10. Section 544(a)(3) of the Bankruptcy Code grants a trustee "the rights and powers of . . . a bona fide purchaser of real property, other than fixtures, from the debtor, against whom applicable law permits such transfer to be perfected, that obtains the status of a bona fide purchaser and has perfected such transfer at the time of the commencement of the case, whether or not such a purchaser exists." 11 U.S.C. § 544(a)(3). To determine whether Trustee may be considered a bona fide purchaser, the Court must first assess the "knowledge" component of § 544(a) and then evaluate, under applicable state law, whether the Trustee possessed constructive knowledge. Before addressing a bona fide purchaser's actual knowledge or constructive notice, it should be noted that there is some disagreement amongst bankruptcy courts as to whether the Trustee could ever acquire the "rights and powers of . . . a bona fide purchaser of real property" because the

Trustee acquired the Real Property from Arbor Land rather than "from the debtor" in the Trustee's Post-Petition Real Property Transfer. *Id.*[5]

**i. <u>Actual Knowledge.</u>**

27. While a "trustee's powers as a hypothetical lien creditor or *bona fide* purchaser are defined by applicable state law," the Bankruptcy Code first excises any of the trustee's actual knowledge from the bona fide purchaser analysis. *In re Perrow*, 498 B.R. 560, 570 (Bankr. W.D. Va. 2013) (emphasis in original)*; see also In re Houston*, 409 B.R. at 805 ("Trustee's status as a bona fide purchaser arises from the Bankruptcy Code, federal law, yet the effect of the status depends on state law."). The Bankruptcy Code plainly states a trustee may be a bona fide purchaser "without regard to any knowledge of the trustee or of any creditor." 11 U.S.C. § 544(a). "Information obtained by the Trustee subsequent to commencement of the case . . . is irrelevant to the Trustee's status as a bona fide purchaser of the real property" so long as "[t]he Trustee did not

[5] Although this "from the debtor" argument was not raised by FTF or the Trustee in the pleadings or at the Hearing, bankruptcy courts appear to be split on how to interpret the phrase in the broader context of § 544(a). *Compare Reasonover v. United States* (*In re Reasonover*), 236 B.R. 219, 228 (Bankr. E.D. Va. 1999) ("[T]he literal text of § 544(a)(3) not only does not limit the trustee's avoidance powers to transfers '*by*' the debtor, it is not even restricted to 'transfers.' Rather, what the statute says is that the trustee has 'the *rights and powers of,* or may avoid any transfer *of* property of the debtor . . . that is voidable by—. . . a bona fide purchaser of real property'" (emphasis in original) (quoting 11 U.S.C § 544(a)(3)), *and Stern v. Am. Home Mortg. Servicing, Inc.* (*In re Asher*), 488 B.R. 58, 66 (Bankr. E.D.N.Y. 2013) (agreeing with "*Reasonover* in its conclusion: § 544(a)(3) confers upon a trustee 'all the rights and powers of a bona fide purchaser'" and "simply empowers a trustee generally and the Plaintiff here to exercise 'the rights and powers' of a hypothetical BFP" (quoting 11 U.S.C. § 544(a)(3))), *and Branch Banking and Trust Co. v. Rhodes* (*In re Hayes Iron & Metal, Inc.*), No. 13-1057C-11G, 2014 WL 2157433, at *3 (Bankr. M.D.N.C. May 23, 2014) ("As pointed out in *Reasonover,* the text of section 544(a)(3) not only does not limit the trustee's avoidance powers to transfers 'by' the debtor, it is not even limited to 'transfers.'" (quoting *Reasonover*, 236 B.R. at 228)), *with In re Mill Concepts Corp.*, 123 B.R. 938, 941 (Bankr. D. Mass. 1991) ("Nowhere in subparagraph (3) is there any indication of a grant of power beyond the ability to avoid transfers of property made by the debtor."). A restrictive interpretation of the "from the debtor" phrase would benefit FTF because the Debtor never owned the Real Property and therefore the Trustee could never have been a bona fide purchaser of the Real Property "from the debtor" in the § 544(a)(3) context. *See Mills v. Brown* (*In re Brown*), 182 B.R. 778, 781 (Bankr. E.D. Tenn. 1995) ("Some courts read this language as conferring on the trustee the *status* of a bona fide purchaser for all purposes, whether or not any real transfer of property from the debtor has taken place, and, indeed, this may be considered the majority rule at present."). FTF did not raise this argument; at this time the Court does not feel the need to put a stake in the ground on this issue because all of FTF's other arguments lead to the same conclusion: the Mortgage is invalid due to Arbor Land's ownership of the Real Property at the time of the 2023 Transaction.

have constructive notice . . . at the time of commencement of the bankruptcy case." *In re Houston*, 409 B.R. at 806–07.

28. The United States Court of Appeals for the Fourth Circuit has specifically addressed the issue of whether a chapter 7 trustee can be a bona fide purchaser for purposes of § 544(a)(3) when the trustee had actual knowledge that a creditor failed to properly record a deed of trust for two tracts of land. *See In re McCormick*, 669 F.3d 177, 180 (4th Cir. 2012).[6] In *McCormick*, a debtor's schedules described a lien attaching to two tracts of land, but, when previously "submitted for recordation, . . . the deed of trust included only the PIN number of Tract II and not the PIN number for Tract I." *See id.* at 179–80.[7] The parties in *McCormick* agreed that a title search on Tract I "would not have disclosed the . . . lien." *Id.* Even though the debtor and the bank both believed that they had "secured the loan with a deed of trust given as to both Tracts I and II," the trustee was still able to avoid the lien on Tract I because "the [t]rustee's actual knowledge of the lien is irrelevant" when making a bona fide purchaser determination under § 544(a). *Id.* at 179–80. Stated differently, a trustee is merely held to the same knowledge as a hypothetical bona fide

---

[6] The Trustee also identified a decision by the United States Court of Appeals for the Fourth Circuit that prevented the assertion of an avoidance action under § 544(a) where the real property purchaser had "actual notice of the conveyance" because the purchaser was a "party to the transaction." *In re Hartman Paving, Inc.*, 745 F.2d 307, 310 (4th Cir. 1984). In *Hartman Paving*, the Fourth Circuit held that "an improperly acknowledged deed is only void against subsequent bona fide purchasers for value who take *without actual* notice." *Id.* at 309 (emphasis in original). The reasoning in *Hartman Paving* is not applicable in this case for a multitude of reasons. First, the Court is reluctant to fervently adopt the most expansive interpretation of *Hartman Paving*, which seems to contradict the plain language of 11 U.S.C. § 544(a), especially when "[e]very other circuit court to discuss *Hartman Paving* has declined to follow the decision." *Dunes Hotel Assocs. v. Hyatt Corp.* (*In re Dunes Hotel Assocs.*), 194 B.R. 967, 979 (Bankr. D.S.C. 1995); *see also AFB & T v. Sullivan* (*In re Sullivan*), No. 10-62818, 2011 WL 350432, at *3 (Bankr. N.D. Ga. Feb. 3, 2011) ("*Hartman Paving* stands alone in the face of all other circuits as well as numerous district and bankruptcy courts who hold that the actual knowledge of a debtor in possession is immaterial to § 544(a)(3)."). Second, the logic at the center of *Hartman Paving* was contradicted several years later, in 1986, when the Fourth Circuit held that "knowledge" in the context of 11 U.S.C. § 550(b)(1) "does not mean 'constructive notice'" and therefore only applies to actual knowledge. *Smith v. Mixon*, 788 F.2d 229, 232 (4th Cir. 1986). Third, the facts in *Hartman Paving* are distinct from the facts here. Unlike the purchaser in *Hartman Paving*, the Trustee in this case was not a "party to" the 2023 Transaction that occurred between the Debtor and the Defendant in April 2023. 745 F.2d at 310.

[7] The county where *McCormick* took place (Orange County, North Carolina) uses the "parcel identification number (PIN) index" as the "County's official real property recording index." *Id.*

purchaser. Even though the trustee in *McCormick* may have had actual knowledge, so long as a "bona fide purchaser would not have taken [Tract I] subject to the lien, then neither would the [t]rustee." *Id.* at 180 (citing *Havee*, 775 F.2d at 1218). Therefore, a bona fide purchaser of real property without a lien recorded against such parcel "would have no reason to examine the title to [a different parcel of real property], as might the [t]rustee, and thus cannot be imputed with knowledge of the status of title other than as appears with respect to [the real property without a lien recorded against it]." *Id.* at 182.

29. Here, the Trustee may still be a bona fide purchaser, even with actual knowledge of the Mortgage, because "the Trustee's actual knowledge of the [purported] lien is irrelevant[,]" and the Mortgage was ineffective. *Id.* at 180. Although FTF asserts that the "Trustee had actual and constructive knowledge of FTF's interest in the Real Property[,]" § 544(a) determines the Trustee's bona fide purchaser status "without regard to any [actual] knowledge." 11 U.S.C. § 544(a); *see In re McCormick*, 669 F.3d at 179–80. Therefore, the Trustee may retain his status as a bona fide purchaser even if he had actual knowledge, on the Petition Date, of Arbor Land's failure to convey the property to the Debtor as part of the 2023 Transaction. As of the Petition Date, Arbor Land, not the Debtor, was the recorded owner of the Real Property according to the Chester County Register of Deeds. The Trustee's alleged knowledge, on the Petition Date or shortly thereafter,[8] of the intent of the Debtor, FTF, and Arbor Land to transfer the Real Property to the Debtor as part of the 2023 Transaction is simply not relevant to the bona fide purchaser analysis under § 544(a). Thus, any actual knowledge of the Trustee regarding Arbor Land's intentions to transfer the Real Property as part of the 2023 Transaction, is irrelevant to a § 544(a) avoidance action because, "under § 544,

[8] FTF asserts that the Trustee's post-petition title searches and the Application to Employ Auctioneers in April and May 2024 may have given the Trustee actual knowledge about the intentions of the Debtor, FTF, and Arbor Land in the 2023 Transaction. *See* FTF's Pleadings Judgment Br. at 8.

the Trustee is imputed with only the knowledge imputable to a bona fide purchaser." *In re McCormick*, 669 F.3d at 182.

**ii. <u>Constructive Notice.</u>**

30. While a trustee's actual knowledge is exempted by federal law under 11 U.S.C. § 544(a), a "trustee's powers as a hypothetical lien creditor or *bona fide* purchaser are defined by applicable state law" in all other respects. *In re Perrow*, 498 B.R. at 570 (emphasis in original). In the real property context, "a trustee, as a bona fide purchaser under § 544(a), is subject to all the constructive notice provisions of the state in which the trustee is attempting to assert his § 544 power." *In re Suggs*, 355 B.R. 525, 527 (Bankr. M.D.N.C. 2006) (quoting *Harkins v. Wheeling Nat'l Bank* (*In re Morgan*), 96 B.R. 615, 618 (Bankr. N.D.W. Va. 1989)). The Court looks to South Carolina law to determine whether the Trustee may avoid the Mortgage as exercise of the Trustee's § 544 "strong-arm" power because the degree to which a bona fide purchaser has constructive notice of the Mortgage is "governed entirely by the applicable state law." *Havee*, 775 F.2d at 1218.[9] In this case, the Real Property is located in Fort Lawn, South Carolina, and therefore, the Court applies South Carolina state law to determine whether the Trustee is a bona fide purchaser for purposes of § 544(a)(3).[10]

31. Pursuant to South Carolina law, a bona fide purchaser must show "(1) he has actually paid in full the purchase money (giving security for the payment is not sufficient, nor is past indebtedness a sufficient consideration); (2) he purchased and acquired the legal title, or the

---

[9] *See also In re Taylor-Ramsey Corp.*, 458 B.R. at 274 ("While it is § 544(a)(1) of the Bankruptcy Code that grants the rights of a hypothetical lien creditor to the trustee, the scope of those rights is determined by applicable state law. . . . In this case, the applicable state law is that of Virginia, where the real property subject to the Deed of Trust is located.").

[10] *See In re Spencer*, 354 B.R. 758, 765 (Bankr. D.S.C. 2006) ("[C]onstructive notice, as determined by state law, will defeat the trustee's rights under 11 U.S.C.S. § 544(a)(3) just as such notice would defeat the rights of any *bona fide* purchaser of real property." (quoting *Satterfield v. Sigmon* (*In re Mahaffey*), 91 F.3d 131 (4th Cir. 1996) (unpublished))).

best right to it; and (3) he purchased bona fide, *i.e.,* in good faith and with integrity of dealing, without notice of a lien or defect." *Spence v. Spence*, 628 S.E.2d 869, 874–75 (S.C. 2006). A party is not entitled to protection as a bona fide purchaser "in the context of a real estate transaction" unless that party conducts "an examination of the public record." *See id.* at 876. In South Carolina, "constructive notice or inquiry notice in the context of a real estate transaction often is grounded in an examination of the public record because it is the proper recording of documents asserting an interest or claim in real property which gives constructive notice to the world." *Ten Woodruff Oaks, LLC v. Point Dev., LLC*, 683 S.E.2d 510, 515 (S.C. Ct. App. 2009) (quoting *Spence,* 628 S.E.2d at 876). Accordingly, the proper "recording of the documents is constructive notice to all." *Spencer*, 354 B.R. at 765.

32. A mortgage outside the chain of title a parcel of real property does not constitute constructive notice because "only such encumbrances placed against the property by owners within the chain of title . . . affect [a lender's] lien." *Liberty Loan Corp. of Darlington, S.C. v. Mumford*, 322 S.E.2d 17, 21 (S.C. Ct. App. 1984).[11] Therefore, pursuant to South Carolina law, a bona fide purchaser "is not charged with notice from the record of conveyances from his grantor, prior to such grantor's acquisition of title." *Richardson v. Atl. Coast Lumber Corp.*, 75 S.E. 371, 373 (S.C. 1912) (quoting WILLIAM P. WADE, A TREATISE ON THE LAW OF NOTICE AS AFFECTING

---

[11] Some state courts in South Carolina have found that "[c]onstructive or inquiry notice in the context of a real estate transaction *also* may arise when a party becomes aware or should have become aware of certain facts which, if investigated, would reveal the claim of another[.]" *Ten Woodruff Oaks*, 683 S.E.2d at 515 (quoting *Spence*, 628 S.E.2d at 876) (emphasis in original). This limited exception is not applicable here for two reasons. First, *Ten Woodruff Oaks* was decided in the context of an easement whereas the dispute here involves the recording of the Mortgage. Second, it would have been difficult for the Trustee, on the Petition Date, to disentangle the failed transfer of the Real Property from Arbor Land to the Debtor as part of the 2023 Transaction, based solely on the Petition and Schedules, even if the Trustee had conducted "a reasonably cautious and prudent" investigation. *Id.* (quoting *Spence*, 628 S.E.2d at 120). The Trustee would have struggled to piece together the allegedly incomplete 2023 Transaction on the Petition Date even if the Trustee had "*all* knowledge that an investigation by a reasonably cautious and prudent purchaser would have revealed." *Id.* (emphasis in original) (quoting *Spence*, 628 S.E.2d at 120).

CIVIL RIGHTS AND REMEDIES § 214 (1878)). A bona fide purchaser "is not bound to inquire further back" into the record prior to that grantor's acquisition of title. *Id.* at 372 (citing JOHN NORTON POMEROY, JR., 2 A TREATISE ON EQUITY JURISPRUDENCE, AS ADMINISTERED IN THE UNITED STATES OF AMERICA; ADAPTED FOR ALL THE STATES, AND TO THE UNION OF LEGAL AND EQUITABLE REMEDIES UNDER THE REFORMED PROCEDURE § 658 (1905)). This limited duty of inquiry serves as a "benefit of subsequent purchasers; to protect them from secret conveyances." *Id.* at 373 (quoting *Doswell v. Buchanan's Ex'rs*, 30 Va. 365, 377 (1831)). Critically, the Fourth Circuit has directed lower courts to not "blur[] the distinction between the notice given by a properly recorded lien and notice derived from other sources." *In re McCormick*, 669 F.3d at 182.

33. Here, FTF asserts that the Trustee had constructive notice of the Mortgage because (1) the Defendant "recorded its Mortgage against the Debtor" in the Chester County Register of Deeds on April 12, 2023, which was prior to the Petition Date, and (2) the Debtor's schedules listed the Real Property as an asset in Schedule A/B and the Mortgage as a secured debt in Schedule D. FTF's Pleadings Judgment Br. at 6, 8. While the Mortgage identified the Debtor as the mortgagor and FTF as the mortgagee, Arbor Land remained the recorded owner of the Real Property per the Chester County Register of Deeds from the date of the 2023 Transaction through the Petition Date eleven (11) months later. Contrary to the alleged intentions of the Debtor and FTF at the time of the 2023 Transaction, the Real Property never actually transferred from Arbor Land to the Debtor before the Petition Date. At no point before the Trustee's Post-Petition Real Property Transfer did the Plaintiff have constructive notice under South Carolina law because "constructive notice . . . in the context of a real estate transaction . . . is grounded in an examination of the public record." *Ten Woodruff Oaks*, 683 S.E.2d at 515 (quoting *Spence,* 628 S.E.2d at 876). A hypothetical bona fide purchaser conducting a reasonable search through the Chester County

Register of Deeds for the Real Property would not have been able to find the Mortgage because the Mortgage was not signed by the record owner of the Real Property, Arbor Land. Moreover, the Debtor's Petition and schedules would not have revealed that Arbor Land was the recorded owner of the Real Property rather than the Debtor. While there was an alleged error in the "simultaneous[]" 2023 Transaction,[12] the Trustee cannot be imputed with constructive notice of the Mortgage even if the Trustee did in fact have actual knowledge. *See McCormick*, 669 F.3d at 180. Thus, the Trustee was a bona fide purchaser of the Real Property with no constructive notice of the Mortgage because the Mortgage was outside the Real Property's "chain of title." *Liberty Loan Corp.*, 322 S.E.2d at 21. The Trustee was "not bound to inquire" beyond Arbor Land's ownership of the Real Property at the Chester County Register of Deeds. *Richardson*, 75 S.E. at 372

34. Lastly, the Mortgage was not, and could not be, "perfected . . . at the time of the commencement of the case" because the Debtor did not own the Real Property when the Debtor sought to encumber the Real Property with the Mortgage in April 2023. 11 U.S.C. § 544(a)(3). The Trustee qualifies a bona fide purchaser under South Carolina law because he lacked constructive knowledge of the Mortgage due to the Mortgage not being in the Real Property's "chain of title" at the Chester County Register of Deeds. *Liberty Loan Corp.*, 322 S.E.2d at 21. Therefore, the Trustee, taking the Real Property free and clear of the Mortgage as a "bona fide purchaser" pursuant to 11 U.S.C. § 544(a), may, per the second claim for relief in the Complaint, "recover from [FTF] the property transferred pursuant to the FTF Mortgage and the FTF UCC, or the value of such transfers pursuant to 11 U.S.C. § 550(a)." Complaint ¶ 36.

---

[12] FTF's Pleadings Judgment Br. at 3.

**C. Equitable Lien under South Carolina Law.**

35. FTF asserts that the Real Property is subject to an "equitable lien under South Carolina law, which defeats the Trustee's strong-arm powers." FTF's Pleadings Judgment Br. at 1–2. First, South Carolina courts have held that an equitable lien requires "a debt, specific property to which the debt attaches, and an expressed or implied intent that the property serve as security for payment of the debt." *Regions Bank v. Wingard Props., Inc.*, 715 S.E.2d 348, 353 (S.C. Ct. App. 2011) (quoting *First Fed. Sav. & Loan Ass'n of S.C. v. Finn,* 387 S.E.2d 253, 254 (S.C. 1989)).[13] "A mere breach of contract does not give rise to an equitable lien." *Carolina Attractions, Inc. v. Courtney*, 337 S.E.2d 244, 247 (S.C. Ct. App. 1985). An equitable lien requires "an affirmative act." *Perpetual Fed. Sav. & Loan Ass'n v. Willingham*, 370 S.E.2d 286, 287 (S.C. Ct. App. 1988). At the trial stage, the party asserting an equitable lien "has the burden of proof as to each element of a cause of action to establish an equitable lien." *In re Riley*, 478 B.R. 736, 748 (Bankr. D.S.C. 2012). Second, FTF's request for an equitable lien must satisfy fundamental principles of equity, including the principle that equity will not intervene where there is an "adequate remedy at law." *Carolina Attractions*, 337 S.E.2d at 247.

[13] The Trustee also asserts that there is an additional requirement that "the mortgagor later acquires the property" for an equitable lien to attach. Trustee's Pleadings Judgment Br. at 7. Because the Debtor never "later acquire[d]" the Real Property from Arbor Land, the Trustee believes that FTF is not entitled to an equitable lien. *Id.* To support this assertion, the Trustee cites to *Perkins v. Loan & Exchange Bank of South Carolina*, which states "that, by a mortgage covering after-acquired personal property, the mortgagee may obtain a lien upon such property after it is acquired by the mortgagor." 20 S.E. 759, 761 (S.C. 1895) (citing *Moore v. Byrum*, 10 S.C. 452 (1879); *Parker & Co. v. Jacobs*, 14 S.C. 112 (1880); *Hirshkind & Co. v. Israel*, 18 S.C. 157 (1882)). The cases that the Trustee cites for this assertion all concern chattel mortgages involving personal property rather than real property. Separately, the Court of Appeals of South Carolina did find that when a "seller contracts to convey real estate to which he does not yet have title, the purchaser's [equitable] lien arises when the money is paid and attaches to the property as security for the money when the seller acquires title." *S.C. Fed. Sav. Bank v. San-A-Bel Corp.*, 413 S.E.2d 852, 854 (S.C. Ct. App. 1992). But, later in *San-A-Bel Corp.*, the court held that "there is no distinction between the case where the seller contracts to sell realty to which he has existing title and the case where he later acquires title." *Id.* Therefore, it appears that the South Carolina allows an equitable lien to attach when the real property is "later acquire[d,]" but that later acquisition does not appear to be expressly mandated. *See id.* For that reason, the Court does not find it necessary for the Real Property to be "later acquired" for the Court to find an equitable lien attached to the Real Property.

36. The "specific property" element of an equitable lien must be "a res to which the obligation attaches, which can be described with reasonable certainty." *Chase Home Fin., LLC v. Risher*, 746 S.E.2d 471, 475 (S.C. Ct. App. 2013); *see also First Union Com. Corp. v. Nelson, Mullins, Riley and Scarborough* (*In re Varat Enters., Inc.*), 81 F.3d 1310, 1319 (4th Cir. 1996) (interpreting South Carolina equitable lien law to find that a debt was "attached to a specific *res*" in the form of an arbitration award (emphasis in original)). In *Chase Home Finance,* a lender made a loan to a husband, secured by a mortgage on the family home, even though the husband only owned an undivided one-half interest in the home. 746 S.E.2d at 473–74. When the lender later tried to foreclose on the home, the Court of Appeals of South Carolina found that no equitable lien attached to the home because the wife, who owned the other one-half interest, did not have "an express or implied intent that" the home "would serve as security for payment of the debt that [the husband] incurred." *Id.* at 475. Specifically, the court noted that an attorney "attended the closing" and the wife "signed several documents at the closing," but the wife never signed the mortgage, either at closing or during the year and a half leading up to the foreclosure attempt. *Id.* at 475. The lack of authorization by the wife from the outset created a situation where "there was no unauthorized act for [the wife] to ratify." *Id.* at 476. Even though the wife had knowledge of the loan, acknowledged that the purchase depended on it, and "benefited from" the loan to the husband, the court still found no equitable lien attached to the home. *Id.*

37. As to the third element of an equitable lien, the intent to create an equitable lien "cannot be implied from an express negative[,]" such as "a covenant not to encumber or transfer property." *Perpetual Fed. Sav. & Loan Ass'n*, 370 S.E.2d at 287 (citations omitted). Evidence of intent must consist of more than just transactional documents, contracts, and signed checks if that documentary evidence fails to suggest any overarching purpose for the transfer of funds. *In re*

*Riley*, 478 B.R. at 748 (finding a "check and its indorsement" as "deficient" proof of intent because the party asserting an equitable lien "has the burden of proof on the issue of the parties' intent"). In *San-A-Bel Corp.*, buyers of condominiums paid a down payment to a developer that then sought a construction loan from a bank. 413 S.E.2d at 853. The Court of Appeals of South Carolina found that the bank took its lien "subject to the prior equitable interests of the" buyers because "the Bank had notice of the [buyers'] equitable interest in the property." *Id.* at 854–55. In fact, the bank required the developer to have a certain number of condominium units pre-sold with downpayments before it would make the construction loan. *Id.*

38. Merely satisfying those three elements of an equitably lien is not sufficient for an equitable lien to apply in every situation because courts in South Carolina then apply general principles of equity. The Court of Appeals of South Carolina has held that "equity will not impose an equitable lien where there is an adequate remedy at law." *Carolina Attractions*, 337 S.E.2d at 247; *see also Nutt Corp. v. Howell Rd., LLC*, 721 S.E.2d 447, 449 (S.C. Ct. App. 2011) ("[E]quity is generally only available when a party is without an adequate remedy at law."). "An 'adequate' remedy at law is one which is as certain, practical, complete and efficient to attain the ends of justice and its administration as the remedy in equity." *Nutt Corp.*, 721 S.E.2d at 450 (quoting *Milliken & Co. v. Morin,* 685 S.E.2d 828, 832 (S.C. Ct. App. 2009)). Equitable relief hinges on the "impracticability of obtaining full and adequate compensation at law." *Nutt Corp.*, 721 S.E.2d at 449. Equity primarily serves to cure "accident, mistake, and fraud." *Regions Bank*, 715 S.E.2d at 355.

39. It is incumbent upon the party seeking an equitable lien "to allege and prove the lack of an otherwise adequate remedy." *Barrett v. Flowers*, No. 2011-UP-007, 2011 WL 11730303, at *3 (S.C. Ct. App. June 2, 2011) (unpublished). In the *Barrett* case, a bank disbursed loan funds

after a title search which failed to detect a lis pendens. The Court of Appeals of South Carolina denied the bank's request for an equitable lien based upon the mistake of an inaccurate title search stating "hornbook law [provides] that equity will not impose an equitable lien where there is an adequate remedy at law." *Id.* at *2 (quoting *Carolina Attractions*, 337 S.E.2d at 247; citing *Georgia–Carolina Gravel Co. v. Blassingame,* 123 S.E. 324, 326 (S.C. 1924) (finding where no facts were alleged showing plaintiff's remedy at law was inadequate, equity would not assume jurisdiction on the theory of an equitable lien)).

40. Finally, "courts should not stretch equitable principles to unfairly place fault on parties who did not contribute to the underlying transaction." *Wachovia Bank*, 746 S.E.2d at 38. "A court of equity should scrutinize the conduct of the" party seeking an equitable lien "with the utmost care, to ascertain [whether] he has done everything which ought to have been done to secure the action requested." *Regions Bank*, 715 S.E.2d at 355. In *Wachovia Bank*, the Supreme Court of South Carolina affirmed the decision of a master-in-equity that a bank cannot foreclose on a husband's home equity line of credit, secured by the marital home, when the home was "titled in Wife's name only" 746 S.E.2d at 38. The Supreme Court of South Carolina held that "equity should not be used to validate Husband's decision to mortgage a property for which he held no interest." *Id.* at 38 n.1. The court "stress[ed] that sophisticated financial institutions that prepare mortgages purporting to encumber a customer's property must ensure that the customer in fact holds a legal interest in that property so as to protect all pertinent interests." *Id.* The court also expressed concerns about adopting "an equitable doctrine so broad as to allow lenders to ameliorate their complete failure to exercise proper due diligence at the expense of third parties." *Id.*

41. Applying the facts in this case to the "debt" requirement of an equitable lien, it is undisputed that the Promissory Note satisfied this first element. *See Regions Bank*, 715 S.E.2d at

353. Turning to the second element, FTF alleges that the Real Property was the "specific property to which the debt attaches." *Id.* The Court finds this argument unavailing because the Debtor did not actually own the Real Property when it tried to encumber the Real Property with the Mortgage. In *Chase Home Finance*, the Court of Appeals of South Carolina found that there must be "a res to which the obligation attaches." 746 S.E.2d at 475. Similar to the facts in the *Chase Home Finance* case, here, the Debtor did not have authority to attach any obligations to the "res"–the Mortgage–in the 2023 Transaction because the Debtor did not own the Real Property that it sought to encumber. *See* Amended Counterclaim ¶ 19; FTF's Pleadings Judgment Br. at 3.

42. As for the "intent" requirement of an equitable lien, FTF asserts that an escrow agreement between the Debtor and FTF[14] indicates that there was "an expressed or implied intent that the property serve as security for payment of the debt." *Regions Bank*, 715 S.E.2d at 353. Even though the Trustee concedes that Arbor Land "intended to transfer the Real Property to the Debtor prior to the Petition Date," Arbor land "through oversight, failed to do so." Trustee's Pleadings Judgment Br. at 2. Although the alleged intent of the Debtor, FTF, and Arbor Land was to transfer the Real Property from Arbor Land to the Debtor "simultaneously" as part of the 2023 Transaction, that transfer never actually occurred. FTF's Pleadings Judgment Br. at 3. The fact that FTF "knew about" Arbor Land's ownership of the Real Property "at the time it made the . . . loan" leads the Court to question how serious or dedicated the parties were to fully executing the deal by properly recording the transfer of the Real Property from Arbor Land to the Debtor. *Regions Bank*, 715 S.E.2d at 353.

43. Nevertheless, at this stage in the proceeding, the Court does not feel that it is appropriate to decide the issue of intent because the Trustee has failed to "clearly establish[] that

[14] The escrow agreement was signed by Tisha S. Macuga on behalf of the Debtor, not Arbor Land. *See* FTF's Pleadings Judgment Ex. B; Amended Counterclaim Ex. E.

no material issue of fact remains to be resolved." *Montagano*, 805 F. Supp. 3d at 674 (quoting *Wolfington*, 935 F.3d at 195). Because the "express or implied intent" of Arbor Land regarding the Real Property is a question of fact, the Court is hesitant to definitively proclaim that FTF's lack of documentary evidence about Arbor Land's intentions during the 2023 Transaction demonstrates a complete lack of intent. *Chase Home Fin.*, 746 S.E.2d at 475. While FTF has satisfied, or at least plausibly alleged, the first and third elements of an equitable lien under South Carolina law, it has failed to satisfy the second element because the Real Property was not, and could not be, the "specific property to which the debt attaches" due to the fact that the Debtor never owned the Real Property. *Regions Bank*, 715 S.E.2d at 353.

44. Furthermore, and perhaps more importantly, FTF failed to allege it was without "an adequate remedy at law." *Carolina Attractions, Inc.*, 337 S.E.2d at 247. While FTF discusses the Mecklenburg County Superior Court Lawsuit in the Answer and Counterclaim, FTF fails to allege in its Answer and Counterclaim or FTF's Pleadings Judgment Brief that there is an inadequate remedy at law. In fact, FTF has pursued multiple legal avenues to rectify the issue. Initially, the Defendant sued the Trustee, Arbor Land, and the Debtor in this Court in July 2025 as part of the First FTF Adversary Proceeding, which the Court dismissed in its First FTF Adversary Proceeding Dismissal Order, entered on September 23, 2025. Later, in February 2026, FTF sued Arbor Land in Mecklenburg County Superior Court "for fraud, breach of contract, and unjust enrichment arising from Arbor Land's failure to convey the Real Property to the Debtor" in the April 2023 Transaction.[15] The Mecklenburg County Superior Court Lawsuit resulted in a default judgment against Arbor Land, which FTF may seek to collect from Arbor Land.

[15] *See* Dismissal Order at 3–4 ("On February 11, 2026, while the Trustee held the Real Property, FTF filed suit against Arbor Land alone in Mecklenburg County Superior Court, Case No. 26-CV-008074-590 . . . asserting claims for fraud, breach of contract, and unjust enrichment arising from Arbor Land's failure to convey the Real Property to the Debtor as represented . . . [and the] Mecklenburg County Superior Court entered default against Arbor Land on

45. FTF's varying, and sometimes successful, legal maneuvers stand in stark contrast with the "impracticability of obtaining full and adequate compensation at law" that the Court would need to justify granting FTF's request for an equitable lien. *Nutt Corp.*, 721 S.E.2d at 449. More to the point, the Trustee emphasized at the September Hearing that "equity will not rescue a litigant from its own sloppy business practices." Hr'g Tr., Sept. 10, 2026. FTF responded that the Trustee "could not . . . confirm . . . [the] transfer [of] the Real Property prior to lending funds because the Real Property was to be transferred simultaneously with the closing of the loan." *Id.* Thereafter, the Trustee replied that the structure and execution of the 2023 Transaction was "by definition, a bad business deal, and [the Defendants] can't hide behind their . . . business practices that don't allow them to verify that the party granting the mortgage owns a real estate." *Id.*

46. While the Court does not directly address this acrimonious aspect of the dispute, the Court of Appeals of South Carolina has found that the party with "incautious and misplaced confidence . . . must bear the consequences of its conduct." *Horry Cnty. v. Ray*, 674 S.E.2d 519, 524 (S.C. Ct. App. 2009). Applying equitable principles, South Carolina state courts have been reluctant to introduce an equitable lien as a stopgap for haphazard real estate transactions between commercial players.[16] Granting FTF an equitable lien at this time would put FTF in a better position than it was in before the Petition Date. FTF should not be rewarded for its lack of diligence in both the closing of the 2023 Transaction and the eleven (11) month period thereafter. FTF has not "done everything which ought to have been done to secure the" transfer of the Real Property

---

April 15, 2026, and entered a default judgment on May 8, 2026, awarding FTF $287,000.00 plus pre- and post-judgment interest.").

[16] *See San-A-Bel Corp.*, 413 S.E.2d at 855 (protecting condominiums buyers by finding an equitable lien); *Barrett*, 2011 WL 11730303, at *1–*3 (unpublished) (finding no equitable lien when a lender's title search "failed to reflect" a former spouse's valid lis pendens); *Carolina Attractions*, 337 S.E.2d at 247 (finding no equitable lien for a company that merely alleged a breach of contract because the company did "not allege an inadequate remedy at law"); *Chase Home Fin.*, 746 S.E.2d at 475 (holding that a lender did not have an equitable lien when it sought to foreclose on a husband's mortgage against a wife's undivided one-half interest that was not part of the mortgage).

to the Debtor and the proper recording of the Mortgage. *Regions Bank*, 715 S.E.2d at 355. As in *Wachovia Bank*, "equity should not be used to validate [the Debtor's] decision to mortgage a property for which [it] held no interest." 746 S.E.2d at 38 n.1. Like the Supreme Court of South Carolina, this Court will not adopt "an equitable doctrine so broad as to allow lenders to ameliorate their complete failure to exercise proper due diligence at the expense of third parties." *Id.* While equity can cure "accident, mistake, and fraud," the Court will not squander its equitable powers to correct FTF's failure to ensure the requisite closing documents were appropriately executed and recorded to the detriment of the Debtor's other creditors. *See Regions Bank*, 715 S.E.2d at 355. Therefore, pursuant to South Carolina law, this Court does not grant FTF's request for an equitable lien.[17]

**D. <u>Statute of Limitations.</u>**

47. Turning to the defenses listed in FTF's Answer and Counterclaim, the Court first addresses FTF's assertion that the Trustee brought this adversary proceeding outside of the relevant statute of limitations. *See* Answer and Counterclaim at 6. Under 11 U.S.C. § 544, "[a]n action or proceeding . . . may not be commenced" later than "2 years after the entry of the order for relief." 11 U.S.C. § 546(a)(1)(A). Furthermore, "[t]he commencement of a voluntary case . . . constitutes

---

[17] At this time, the Court does not address whether an equitable lien takes priority over any hypothetical lien by the Trustee because the Court does not find any equitable lien attached to the Real Property. In South Carolina, an equitable lien "relates back to the time it was created by the conduct of the parties" even though "is not judicially recognized until a judgment is entered declaring its existence." *Regions Bank*, 715 S.E.2d at 353. Furthermore, the Court of Appeals of South Carolina has recognized that "one who takes a security interest in real property with notice of an existing third party equity in the property takes subject to the third party's interest." *San-A-Bel Corp.*, 413 S.E.2d at 854. If a court finds that a property is subject to an equitable lien, "§ 544(a)(1) confers on the trustee and the debtor no greater rights than those accorded by the applicable state law to a creditor holding a judicial lien." *In re Surplus Furniture Liquidators, Inc. of High Point*, 199 B.R. 136, 144 (Bankr. M.D.N.C. 1995) "Thus, if state law upholds equitable liens and gives equitable liens priority over the hypothetical judgment lien creditor created by § 544(a)(1), then a creditor with an equitable lien may prevail over the trustee in bankruptcy despite his powers under § 544(a)(1)." *Id.* (citing *Angeles Real Estate Co. v. Kerxton,* 737 F.2d 416, 418 (4th Cir. 1984) ("Thus, if under applicable state law a judgment lien creditor would prevail over an adverse claimant, the trustee in bankruptcy will prevail; if not, he will not.")).

an order for relief." 11 U.S.C. § 301(b). "A civil action is commenced by filing a complaint with the court." FED. R. CIV. P. 3.[18]

48. Here, the Debtor filed the Petition on March 12, 2024, and the Court has not closed or dismissed the Debtor's bankruptcy case as of the date of entry of this Order. On March 3, 2026, the Trustee commenced this adversary proceeding by filing the Complaint. Less than two years elapsed between the Petition Date (March 12, 2024) and the filing of the Complaint (March 3, 2026). Therefore, this adversary proceeding was timely commenced in accordance with 11 U.S.C. § 546(a).

**E. <u>Contemporaneous Exchange.</u>**

49. In FTF's Answer and Counterclaim, FTF asserts the defense of contemporaneous exchange. *See* Answer and Counterclaim at 6. The contemporaneous exchange defense in 11 U.S.C. § 547(c) states that "under this section[,]" a "trustee may not avoid" a transfer that was "intended by the debtor and the creditor to or for whose benefit such transfer was made to be a contemporaneous exchange for new value given to the debtor." Rather than asserting a claim under 11 U.S.C. § 547, the Trustee seeks to avoid the Mortgage pursuant to 11 U.S.C. § 544. Therefore, the defense of contemporaneous exchange is not applicable to the Trustee's § 544(a) avoidance action because the defense is only applicable "under this section[,]" in reference to 11 U.S.C. § 547(c).

**F. <u>FTF's Counterclaims for Fraudulent Transfer.</u>**

50. FTF's Amended Counterclaim asserts three counts of fraudulent transfer under North Carolina law: (1) fraudulent transfer under N.C. Gen. Stat. § 39-23.5(a); (2) fraudulent

[18] *See* FED. R. BANKR. P. 7003 ("Fed. R. Civ. P. 3 applies in an adversary proceeding.").

transfer under N.C. Gen. Stat. § 39-23.5(b); and (3) recovery of a fraudulent transfer under N.C. Gen. Stat. §§ 39-23.7 and 39-23.8. As this Court previously stated in the Dismissal Order, "Each count is premised on the theory that Arbor Land's May 8, 2024 conveyance of the Real Property to the Trustee . . . was a fraudulent transfer that FTF, as a creditor of Arbor Land, may avoid." Dismissal Order at 4. The Court dismissed without prejudice FTF's first attempt in its Answer and Counterclaim to plead the same three counts of fraudulent transfer. *See id.* at 11. The Amended Counterclaim realleges the same three causes of action claim; therefore, the Court primarily addresses the additional and supplemental factual allegations and the ensuing legal arguments contained in the Amended Counterclaim.[19] Additionally, because FTF's allegations of fraudulent transfer are North Carolina state law claims, "the burden [is] on the creditor to prove the elements of the claim for relief 'by a preponderance of the evidence'" at trial. Dismissal Order at 7 (quoting N.C. GEN. STAT. § 39-23.5(c)). FTF alleges that it was a creditor of Arbor Land at the time of the 2023 Transaction and so, at a trial FTF must prove the elements of its claims for relief, the three counts of fraudulent transfer, by a preponderance of the evidence.

51. The Trustee's Motion to Dismiss Amended Counterclaim seeks the dismissal of the three counts of fraudulent transfer due to FTF's "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). In order to survive a Rule 12(b)(6) dismissal motion, the United States Supreme Court has held that a claim must possess "facial plausibility" with sufficient "factual content that allows the court to draw the reasonable inference that [the Trustee] is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, (2009). "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" *Bell Atl. Corp. v. Twombly*, 550

[19] FTF's three causes of action "relate[] to Arbor Land's subsequent transfer of the Real Property to the Trustee post-petition." FTF's Counterclaim Br. at 2.

U.S. 544, 556 (2007) (quoting *Scheuer v. Rhodes,* 416 U.S. 232, 236 (1974)). When considering a motion to dismiss, a court must "accept as true all well-pleaded allegations and view the complaint in the light most favorable to the" movant but a court is "'not required to accept as true the legal conclusions set forth in a . . . complaint.'" *Sec'y of State for Defence v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007) (quoting *Edwards v. City of Goldsboro,* 178 F.3d 231, 244 (4th Cir.1999)). Dismissal may be warranted if there is "an absence of law to support a claim of the sort made, or of facts sufficient to make a good claim, or in the disclosure of some fact which will necessarily defeat the claim." *De Loach v. Crowley's Inc.*, 128 F.2d 378, 380 (5th Cir. 1942).

**i. Count I: Fraudulent Transfer Pursuant to North Carolina General Statute § 39-23.5(a).**

52. The first count in FTF's Amended Counterclaim asserts that the Trustee was a beneficiary of a fraudulent transfer pursuant to North Carolina General Statute § 39-23.5(a) because "Arbor Land did not receive a reasonably equivalent value or benefit from either the Trustee or the Debtor in exchange for the transfer of the Real Property." Amended Counterclaim ¶ 52. In short, FTF alleges that the Trustee's Post-Petition Real Property Transfer was fraudulent because Arbor Land received nothing in return for transferring the Real Property to the Trustee in May 2024. When compared to FTF's original pleading in the Answer and Counterclaim, the amended first count added an assertion that "FTF suffered damages due to Arbor Land's false representations that it would transfer the Real Property to Arbor Construction" and concedes that "FTF's Mortgage is defective because it secures a property that is not in the name of Arbor Construction." Amended Counterclaim ¶ 53.

53. North Carolina General Statute § 39-23.5(a) states that a debtor's transfer is voidable if the transfer was to a "creditor whose claim arose before the transfer was made or the obligation was incurred if the debtor made the transfer or incurred the obligation without receiving

a reasonably equivalent value in exchange for the transfer or obligation, and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation." N.C. GEN STAT. § 39-23.5(a). Thus, a fraudulent transfer pursuant to North Carolina General Statute § 39-23.5(a) requires FTF to plead that (1) its claim arose before the transfer was made, (2) the Trustee's Post-Petition Real Property Transfer was made without Arbor Land receiving a reasonably equivalent value in exchange, and (3) Arbor Land was insolvent at the time or became insolvent as a result of the Trustee's Post-Petition Real Property Transfer. N.C. GEN. STAT. § 39-23.5(a); *see also Est. of Hurst ex rel. Cherry v. Jones*, 750 S.E.2d 14, 21 (N.C. Ct. App. 2013).

**a. <u>FTF Was Not a Creditor of Arbor Land.</u>**

54. To satisfy the first element of fraudulent transfer pursuant to North Carolina General Statute § 39-23.5(a), that FTF's "claim arose before the transfer was made," FTF asserts that it was a creditor of Arbor Land before the Trustee's Post-Petition Real Property Transfer. Amended Counterclaim ¶ 53. The Court reiterates from the Dismissal Order that "FTF's status as a creditor of Arbor Land, the transferor, *before the* [Trustee's Post-Petition Real Property] *Transfer was made*, is a threshold element without which neither count can proceed." Dismissal Order at 7 (emphasis in original). To satisfy that threshold element, FTF must "plead facts showing the existence of a claim against the transferor itself," and the transferor here is Arbor Land. *Id.* at 7. North Carolina's Uniform Voidable Transfers Act ("UVTA") defines "[c]reditor" as "[a] person that has a claim." N.C. GEN. STAT. § 39-23.1(4). In the same UVTA subsection, "[c]laim" is defined as "a right to payment, whether or not the right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured." *See id.* at (3).

55. In the Dismissal Order, this Court disposed of two arguments by FTF in support of its assertion that it was a creditor of Arbor Land prior to Trustee's Post-Petition Real Property Transfer. FTF's first argument was that the Mecklenburg County Superior Court Judgment proved the existence of FTF's underlying claims. Dismissal Order at 7–8. This Court disagreed, and the Dismissal Order established that "the [Mecklenburg County Superior Court] Judgment does not establish, as against the Trustee, that FTF held a claim against Arbor Land that arose prior to the [Trustee's Post-Petition Real Property] Transfer." *Id.* at 9. The Dismissal Order also established that even if this Court adopted the facts alleged in the Mecklenburg County Superior Court Lawsuit into this adversary proceeding, FTF would still not have plead enough facts to establish that the Defendant was a creditor *prior* to the Trustee's Post-Petition Real Property Transfer.[20] The timing is critical because FTF's Amended Counterclaim must establish "whether FTF's underlying claim against Arbor Land existed prior to May 8, 2024[,]" regardless of "when FTF filed suit against Arbor Land or obtained a judgment." Dismissal Order at 8. Furthermore, the Dismissal Order held that the Mecklenburg County Superior Court Judgment does not have preclusive effect in this adversary proceeding because the Mecklenburg County Superior Court Judgment "was entered by default after Arbor Land failed to answer"[21] and the Trustee "was not a party to the [Mecklenburg County Superior] Court Lawsuit and had no opportunity to litigate it." *See id*. at 8–9.

56. In the Dismissal Order, this Court also disposed of FTF's conclusory arguments in its original Answer and Counterclaim, which alleged that "[p]rior to the transfer of the Real Property to the Trustee, FTF held claims against Arbor Land for unjust enrichment and negligent

[20] "Although the State Court Judgment establishes that FTF ultimately obtained a judgment against Arbor Land, it does not, without more, establish that FTF held a claim against Arbor Land before the [Trustee's Post-Petition Real Property] Transfer." Dismissal Order at 9. Relevantly, the lawsuit was filed on February 11, 2026, and so its existence "does not establish when FTF's underlying claims against Arbor Land arose." *Id.* at 8.

[21] "Arbor Land was served on March 7, 2026, and failed to answer or otherwise respond. The Mecklenburg County Superior Court entered default against Arbor Land on April 15, 2026, and entered a default judgment on May 8, 2026, awarding FTF $287,000.00 plus pre- and postjudgment interest." Dismissal Order at 4.

misrepresentation related to Arbor Land's failure to transfer the Real Property to Arbor Construction as agreed and represented." Answer and Counterclaim at 11. The Dismissal Order found that those allegations were merely "legal conclusion[s]" regarding FTF's status as a creditor of Arbor Land "rather than a factual allegation entitled to the presumption of truth." Dismissal Order at 9.[22] Therefore, the Amended Counterclaim must do more than merely "allege that Arbor Land agreed to transfer the Real Property to the Debtor and failed to do so." Dismissal Order at 9.

57. FTF argues under the first element of North Carolina General Statute § 39-23.5(a) that it has a claim arising from the 2023 Transaction, which would help prove that it was a creditor to Arbor Land prior to the Trustee's Post-Petition Real Property Transfer. Specifically, FTF alleges "claims for unjust enrichment and negligent misrepresentation." Amended Counterclaim ¶ 53. To establish itself as a creditor of Arbor Land based upon those two causes of action, FTF must "allege facts permitting the Court to reasonably infer that FTF thereby held a right to payment against Arbor Land prior to the [Trustee's Post-Petition Real Property] Transfer." Dismissal Order at 9. Thus, the Court addresses the claims of negligent misrepresentation and unjust enrichment in turn to determine if FTF was a creditor of Arbor Land prior to the Trustee's Post-Petition Real Property Transfer.

1. **Negligent Misrepresentation.**

58. FTF argues that its negligent misrepresentation claim arose out of the 2023 Transaction, thereby establishing FTF as a creditor of Arbor Land prior to the Trustee's Post-Petition Real Property Transfer and satisfying the first element of fraudulent transfer under North

---

[22] "Although the [counterclaims in the Answer and Counterclaim] allege that Arbor Land agreed to transfer the Real Property to the Debtor and failed to do so, they do not allege facts permitting the Court to reasonably infer that FTF thereby held a right to payment against Arbor Land prior to the [Trustee's Post-Petition Real Property] Transfer." Dismissal Order at 9.

Carolina General Statute § 39-23.5(a). In North Carolina, a negligent misrepresentation claim requires: (1) justifiable reliance, (2) to the party's detriment, (3) on information prepared without reasonable care, (4) by one who owed the relying party a duty of care. *See Lamb v. Styles*, 824 S.E.2d 170, 177 (N.C. Ct. App. 2019); *Walker v. Town of Stoneville*, 712 S.E.2d 239, 244 (N.C. Ct. App. 2011).

59. The first element, justifiable reliance, "is generally a question for the jury, except in instances in which 'the facts are so clear as to permit only one conclusion.'" *Dallaire v. Bank of Am., N.A.*, 760 S.E. 2d 263, 267 (N.C. 2014) (quoting *Marcus Bros. Textiles, Inc. v. Price Waterhouse, LLP,* 513 S.E.2d 320, 327 (N.C. 1999)). Justifiable reliance "is analogous to that of reasonable reliance in fraud actions." *Walker*, 712 S.E.2d at 244–45 (quoting *Marcus Bros. Textiles,* 513 S.E.2d at 327). "A party cannot establish justified reliance on an alleged misrepresentation if the party fails to make reasonable inquiry regarding the alleged statement" unless the party can "'allege that he was denied the opportunity to investigate or that he could not have learned the true facts by exercise of reasonable diligence.'" *Dallaire*, 760 S.E.2d at 267 (quoting *Pinney v. State Farm Mut. Ins. Co.*, 552 S.E.2d 186, 192 (N.C. Ct. App. 2001)).[23]

60. By way of example, in *Barfield v. Matos*, the Court of Appeals of North Carolina held that the defendant's reliance on the plaintiff's representations that the property was clear of "restrictions on it preventing farm use" was not justified because "restrictive covenants were a

---

[23] *See also Calloway v. Wyatt*, 97 S.E.2d 881, 886 (N.C. 1957) ("'A sale of land will not be vitiated by false representations of the seller . . . where the purchaser had sufficient opportunity to examine the subject of the representations but made no examination or investigation, and was not prevented from so doing by any artifice of the seller.'" (quoting *Hays v. McGinness*, 67 S.E.2d 720, 720 (Ga. 1951) (syllabus by the court))); *BDM Invs. v. Lenhil, Inc.*, 826 S.E.2d 746, 761 (N.C. 2019) ("Reliance is not justifiable for purposes of negligent misrepresentation if a plaintiff failed to make reasonable inquiry, had the opportunity to investigate, and could 'have learned the true facts through reasonable diligence.'" (quoting *Rountree v. Chowan Cnty.*, 796 S.E.2d 827, 832 (N.C. Ct. App. 2017))); *Cordaro v. Harrington Bank, FSB*, 817 S.E.2d 247, 255 (N.C. Ct. App. 2018) ("[I]n order to demonstrate justifiable reliance Cordaro was required to allege either that he undertook his own independent inquiry regarding the validity of the Construction Appraisal or that he was somehow prevented from doing so. For this reason, we hold that the trial court did not err in dismissing his negligence claim.").

matter of record which could have been, and should have been, discovered by [the defendant's] attorney." 714 S.E.2d 812, 825–26 (N.C. Ct. App. 2011). The defendant "neither alleged nor forecast any evidence that he was 'denied the opportunity to investigate or that he could not have learned the true facts by exercise of reasonable diligence;'" therefore, the Court of Appeals of North Carolina held that "[the defendant's] reliance upon [the plaintiff's] misrepresentations was unreasonable as a matter of law, and the trial court properly granted summary judgment dismissing the claim for negligent misrepresentation." *Id.* (citing *Pinney*, 552 S.E.2d at 191–92 (dismissing a plaintiff's negligent misrepresentation claim when the complaint did not allege that the plaintiff "was denied the opportunity to investigate" or that the plaintiff could not have learned the true facts "by exercise of reasonable diligence")).[24] The *Barfield* court held that the defendant's responsibility to use reasonable diligence arose because the recorded restrictive covenants could have been reasonably discovered by the defendant. 714 S.E.2d at 825–26.

61. In support of FTF's assertion that justifiable reliance, the first element of negligent misrepresentation, is present here, FTF claims that the additional facts in the Amended Counterclaim are sufficiently plead to establish that "FTF relied on the statements by Arbor Land and Arbor Construction that the Real Property would be and was contemporaneously with the Loan transferred to Arbor Construction." FTF's Counterclaim Br. at 4. FTF asserts that it "was induced to act in extending the loan by the Agreement[25] and conversations with Arbor Construction and Arbor Land that Arbor Land would transfer the Real Property." Amended Counterclaim ¶ 21.

[24] *See also Hudson-Cole Dev. Corp. v. Beemer*, 511 S.E.2d 309, 313 (N.C. Ct. App. 1999) ("[W]hen the party relying on the false or misleading representation could have discovered the truth upon inquiry, the complaint must allege that he was denied the opportunity to investigate or that he could not have learned the true facts by exercise of reasonable diligence." (citing *Rosenthal v. Perkins*, 257 S.E.2d 63 (N.C. Ct. App. 1979))); *Higgins v. Synergy Coverage Sols., LLC*, No. 18 CVS 12548, 2020 WL 256486, at *12, 14 (N.C. Super. Ct. Jan. 15, 2020) (dismissing a plaintiff's negligent misrepresentation claim when the plaintiff did not investigate, did not allege, "and could not allege in good faith, that she was prevented from conducting her own investigation").

[25] The "Agreement" is defined by the Defendant as the *Escrow Agreement* in Exhibit E of the FTF's Amended Counterclaim, but the Agreement does not contain any reference to Arbor Land.

Consequently, FTF believes the element of justifiable reliance has been satisfied by Arbor Land's "represent[ations] to FTF that it would transfer the Real Property to Arbor Construction simultaneously with the closing of the Loan." *Id.* ¶ 37. The Court disagrees. Like the Court concluded in the First FTF Adversary Proceeding Dismissal Order, the Defendant has failed to "allege facts" regarding justifiable reliance. First FTF Adversary Proceeding Dismissal Order at 4. Not only has the Defendant failed to sufficiently allege justifiable reliance, but more importantly, FTF has failed to demonstrate its reasonable independent inquiry into the representations.

62. First, the Amended Counterclaim cites to "statements" between the Debtor and Arbor Land but fails to include any specific information regarding who made the statements or what was asserted by whom. FTF's Counterclaim Br. at 4. The lack of specifics impedes the Court's ability "to draw the reasonable inference that" FTF was justified in its reliance on the statements of Arbor Land. *Iqbal*, 556 U.S. at 678.[26] While FTF attached nine (9) exhibits in the Amended Counterclaim, the six (6) exhibits created at or around the time of the 2023 Transaction were all signed by Tisha S. Macuga, on behalf of the Debtor. *See* Amended Counterclaim Ex. A, B, C, D, E & F (identifying the Affidavit of Non-Occupancy, the Certification of Loan for Business Purposes, the Errors and Omissions Affidavit and Document Re-Execution Agreement, the Promissory Note, the Escrow Agreement, and the Mortgage signed on behalf of Arbor Construction). In the Amended Counterclaim, FTF did not claim that Ms. Macuga has any relationship with Arbor Land or authority to act on its behalf. Thus, those six (6) exhibits provide no new support to justify FTF's reliance on the statements of Arbor Land, and the Amended Counterclaim only contains a "bare conclusory recitation that reliance was reasonable." First FTF Adversary Proceeding Reconsideration Order at 2.

[26] FTF does not allege that any of the Debtor's statements can be attributed to Arbor Land. Thus, the Debtor's statements are irrelevant to the analysis of whether Arbor Land's statements constituted negligent misrepresentation.

63. Furthermore, FTF has "put forth no evidence that they made inquiry [into Arbor Land's representations] or were prevented from doing so." *Dallaire*, 760 S.E.2d at 268; *see also Barfield*, 714 S.E.2d at 825–26. Specifically, FTF has failed to "allege facts in the [Amended Counterclaim] demonstrating that it took an independent inquiry or that something prevented them from" inquiring as to whether Arbor Land did in fact transfer the Real Property to the Debtor and recorded the Mortgage in the Chester County Register of Deeds simultaneously with wiring of the Loan Proceeds to the Debtor. First FTF Adversary Proceeding Dismissal Order at 4.

64. FTF's failure to check the ownership status of the Real Property in official deed book at the Chester County Register of Deeds indicates that any reliance by FTF on statements of Arbor Land was not justified.[27] In fact, all of FTF's allegations indicate that FTF made the assumption that the Real Property would transfer from Arbor Land to the Debtor "simultaneously" with the execution of the Promissory Note and the Mortgage in the 2023 Transaction, but FTF failed to confirm receipt of a recorded deed or conduct a title search to confirm that Real Property actually did change hands. Amended Counterclaim ¶ 17. Like the restrictive covenant in *Barfield*, FTF's reliance here was not justified because title to the Real Property is "a matter of record which could have been, and should have been, discovered by" FTF. 714 S.E.2d at 826.[28] Therefore, FTF has failed to plausibly allege "justifiable reliance" as a matter of law. *Lamb*, 824 S.E.2d at 177.

---

[27] The Trustee also claims that FTF has not sufficiently plead its state of mind at the time of the 2023 Transaction to properly allege justifiable reliance. *See* Trustee's Counterclaim Br. at 10–11. Reliance is not justifiable if FTF "could have discovered the truth upon inquiry." *Dallaire*, 760 S.E.2d at 267. While Arbor Land did not sign the Mortgage, the Promissory Note, or any of the other documents from the 2023 Transaction that FTF attached as exhibits in the Amended Counterclaim, FTF did allege that Arbor Land made "misrepresentations" to FTF in the legal description section of the Mortgage, which described Arbor Land as having conveyed the Real Property to the Debtor and recorded the transfer "simultaneously." *See* Amended Counterclaim ¶ 19, Ex. A, B, C, D, E & F. For a Federal Rule of Civil Procedure 12(b)(6) motion, this sufficiently alleges FTF's state of mind at the time of the 2023 Transaction.

[28] The Fourth Circuit has stated that "North Carolina law has established a precise recording system on which purchasers of real property can rely when searching for the existence of prior liens. If a prior lien is not properly recorded in accordance with the system, then the purchaser can count on taking property as if no lien exists." *In re McCormick*, 669 F.3d at 181 (citing *Hill v. Pinelawn Mem'l Park, Inc.*, 282 S.E.2d 779, 782 (N.C. 1981)). Here, an inquiry at the Chester County Register of Deeds would have indicated that Arbor Land owned the Real Property on the date of, and after, the 2023 Transaction. Additionally, while FTF argues that a title search on the date of the 2023

65. Furthermore, it is unclear if FTF plausibly alleged the third, information prepared without reasonable care, or fourth, owing the relying party a duty of care, elements of negligent misrepresentation. *See id.* FTF merely made conclusory remarks about the alleged "statements" and did not explain how those unspecified "statements" created a duty of care owed by Arbor Land to FTF. FTF's Counterclaim Br. at 4. In conclusion, FTF has failed to plausibly allege any claim of negligent misrepresentation against Arbor Land as a matter of law because FTF was not justified in its reliance on Arbor Land's alleged "statements" when a simple inquiry at the Chester County Register of Deeds would have clearly indicated that Arbor Land owned the Real Property on the date of, and after, the 2023 Transaction. FTF argues that the statements of Arbor Land and the Debtor are both relevant to its claim of negligent misrepresentation, but that argument conflates the Debtor's statements with those of Arbor Land. It would not be proper to analyze the Debtor's statements in the context of whether Arbor Land committed negligent misrepresentation because the Debtor is a separate entity from Arbor Land. As a result, the statements of the Debtor are irrelevant to FTF's argument that it is a creditor of Arbor Land based on negligent misrepresentation.

**2. <u>Unjust Enrichment.</u>**

66. In the Amended Counterclaim, FTF argues that its unjust enrichment claim arose before the 2023 Transaction, thereby establishing FTF as a creditor of Arbor Land prior to the Trustee's Post-Petition Real Property Transfer and satisfying the first element of fraudulent transfer under North Carolina General Statute § 39-23.5(a). FTF argues that Arbor Land was unjustly enriched because it continued to possess the Real Property while enabling its affiliate, the Debtor,

---

Transaction would not have revealed all aspects of the 2023 Transaction, FTF had eleven (11) months to identify Arbor Land's continued ownership of the Real Property and correct the alleged error but failed to do so.

to receive the Loan Proceeds. FTF, in the 2023 Transaction, relied on "Arbor Land's false representations that it would transfer the Real Property to Arbor Construction" in exchange for granting the loan to the Debtor. Amended Counterclaim ¶ 53. FTF contends that Arbor Land's false representations caused FTF to wire the Loan Proceeds to the Debtor after the Debtor signed the Promissory Note, thereby unjustly enriching Arbor Land, as well as the Debtor. Amended Counterclaim ¶ 16.

67. Pursuant to North Carolina law, an unjust enrichment claim is an equitable remedy that requires: (1) a measurable benefit conferred, (2) conscious acceptance of that benefit, (3) the benefit was not conferred officiously or gratuitously, and (4) a legal or equitable obligation on the part of the benefit receiver to account for the benefits conferred. *See JPMorgan Chase Bank, Nat'l Ass'n v. Browning*, 750 S.E.2d 555, 559 (N.C. Ct. App. 2013); *Life Ins. Co. v. James Massengill & Sons Const. Co.*, 712 S.E.2d 670, 677 (N.C. Ct. App. 2011). An unjust enrichment claim exists "'where it would be unfair for the recipient to retain [the benefit] without the contributor being repaid or compensated.'" *JPMorgan Chase Bank*, 750 S.E.2d at 560 (quoting *Collins v. Davis,* 315 S.E.2d 759, 761 (N.C. Ct. App. 1984)). In *JPMorgan Chase Bank*, a father, who owned a one-third interest in a property, sought a loan from a lender that would satisfy the first lien on the property. 750 S.E.2d at 557. The lender approved this loan and secured a new lien on the property without the approval or signature of the sisters who held the other two-thirds interest in the property. *Id.* at 758. When the lender tried to assert that the lien applied to the entire property, the Court of Appeals of North Carolina affirmed a lower court's summary judgment ruling in favor of the sisters that found no unjust enrichment because the lender had loaned money exclusively to the father and the replacement lien was recorded on the property without "solicitation or inducement" of the sisters. *Id.* at 561.

68. Here, in the 2023 Transaction, FTF asserts that it conferred a "measurable" benefit to Arbor Land, thereby satisfying the first element of an unjust enrichment claim, by allowing Arbor Land to keep possession of the Real Property while enabling Arbor Land's affiliate, the Debtor, to receive the Loan Proceeds from FTF. FTF's Counterclaim Br. at 4. FTF believes that the value of the benefit conferred equals the value of the Real Property. *Id.* The Trustee argues that FTF did not confer any direct benefit to Arbor Land because FTF wired the Loan Proceeds to the Debtor, not Arbor Land, and Arbor Land merely retained ownership of the Real Property. Trustee's Counterclaim Br. at 7. The Court agrees with the Trustee that Arbor Land did not *receive* any "measurable" benefit from the 2023 Transaction because Arbor Land merely retained its ownership of the Real Property. Thus, while all parties stipulate that Arbor Land was meant to transfer the Real Property to the Debtor, in actuality, nothing was conferred to Arbor Land in the 2023 Transaction. All of the documents relevant to the 2023 Transaction that FTF included as exhibits in the Amended Counterclaim, such as the Affidavit of Non-Occupancy, the Certification of Loan for Business Purposes, the Errors and Omissions Affidavit and Document Re-Execution Agreement, the Promissory Note, the Escrow Agreement, and the Mortgage, were signed by Tisha S. Macuga on behalf of the Debtor rather than on behalf of Arbor Land. *See* Amended Counterclaim Ex. A, B, C, D, E & F. Accordingly, those documents do not demonstrate the intent of Arbor Land. *See id.*

69. Irrespective of what FTF alleges was supposed to happen to the Real Property during the "simultaneous" 2023 Transaction, Arbor Land, as a separate legal entity from the Debtor, did not receive any money, property, or any other consideration from the Defendant as part of the 2023 Transaction. Amended Counterclaim ¶ 17. Although not cited by either party, *Progressive American Insurance Co. v. State Farm Mutual Automobile Insurance Co.* helps to

establish the contours of what constitutes a measurable benefit when conferred on an unwitting party. 647 S.E.2d 111, 113 (N.C. Ct. App. 2007). In that case, Progressive Insurance paid a car crash victim for damages following a collision involving a Mazda driven by the vehicle owner's son, even though State Farm Insurance, as the insurer for the Mazda's owner, was contractually obligated to pay for those damages. *Id.* The son possessed a Progressive Insurance policy covering the Mazda, and both insurance companies agreed to "share responsibility for the claims arising out of the accident," after which Progressive Insurance realized that the son did not own the vehicle. *Id.* The Court of Appeals of North Carolina held that Progressive Insurance paid the car crash victim "under the mistaken belief that [the son] owned the Mazda at the time of the accident." *Id.* at 117. Thus, Progressive Insurance "conferred a benefit on" State Farm by paying a "readily measurable" benefit in the form of the payout to the car crash victim, which State Farm would have otherwise had to pay. *Id.*

70. Given lack of measurable benefit conferred to Arbor Land and the apparent lack of a contractual obligation between Arbor Land and FTF, the facts here stand in sharp contrast with the facts in *Progressive American Insurance Co.* that gave rise to a finding of unjust enrichment. While FTF acted similarly to Progressive Insurance by giving the Loan Proceeds to the Debtor as part of the 2023 Transaction, the situation in *Progressive American Insurance Co.* is distinct because the Mazda owner had a contractual relationship that obligated State Farm to pay for the crash. *See id.* Here, FTF has not introduced any evidence of contractual relationship between the Debtor and Arbor Land concerning the Real Property. Nor has FTF put forward any evidence of a contractual relationship between FTF and Arbor Land concerning the Real Property. FTF paid the Loan Proceeds to the Debtor while Arbor Land merely kept possession of the Real Property. No consideration was exchanged between FTF and Arbor Land. Therefore, Arbor Land is not

analogous to State Farm because it did not receive a measurable benefit and so was not unjustly enriched.

71. In addition to FTF's argument that Arbor Land was unjustly enriched because it kept the Real Property, FTF also argues that Arbor Land was unjustly enriched when the Debtor received the Loan Proceeds. FTF's argument relies on the faulty assumption that a benefit conferred onto an affiliate, the Debtor, through the transfer of the Loan Proceeds is the same as conferring a benefit on Arbor Land for purposes of an unjust enrichment analysis. North Carolina courts have limited the scope of a claim of unjust enrichment such that the benefit conferred must be conferred directly from a plaintiff to a defendant, not to a third party. *See e.g., Effler v. Pyles*, 380 S.E.2d 149, 152 (N.C. Ct. App. 1989).[29] While *Effler's* strict requirement of a direct transaction has been abrogated in part by *Embree Constr. Grp., Inc. v. Rafcor, Inc.*, 411 S.E.2d 916 (1992), *Effler* has not been explicitly overruled and continues to be cited for the proposition that there must be some meaningful nexus between the benefit allegedly conferred and the party from whom restitution is sought. *Embree* relaxes but does not eliminate the directness requirement. *Id.*

72. Here, the Debtor received a measurable benefit, but Arbor Land did not. Although never raised by FTF, the Trustee asserts that the Debtor is not the alter ego of Arbor Land because FTF fails to plead sufficient facts showing the three required elements of domination, misuse, and causation. *See Glenn v. Wagner*, 329 S.E.2d 326, 331 (N.C. 1985) ("[T]he factor of 'complete domination and control,' gave rise to three elements: (1) stock control and domination of finances, policy and business practice with respect to the transaction attacked; (2) control used by the

---

[29] As between the benefit conferrer and receiver, "[p]rivity is not required to assert an unjust enrichment claim, but a relationship must exist between the parties that is not 'too attenuated.'" *Mendelsohn v. Roslyn, LLC* (*In re Leff*), 631 B.R. 106, 117–18 (Bankr. E.D.N.Y. 2021) (quoting *Georgia Malone & Co. v. Rieder*, 973 N.E.2d 743, 747 (N.Y. 2012)). Although there is no test for such attenuation, courts "have found that a connection between the [benefit conferrer and receiver] is too attenuated when the parties simply had no dealings with each other, or if there is no relationship between the parties that could have caused reliance or inducement." *Id.*

defendant to commit the wrong; and (3) proximate cause."). The Court agrees that the Debtor is a separate entity from Arbor Land. Like the sisters in *JPMorgan Chase Bank* who were found to have not been unjustly enriched by a loan, Arbor Land did not receive any direct benefit from FTF. *See* 750 S.E.2d at 561. While the sisters were related to their father, who executed the loan, and benefitted from the loan, the sisters were not unjustly enriched because they were not part of the loan transaction. *Id.*

73. Like the sisters in *JPMorgan Chase Bank*, Arbor Land did not sign the Mortgage or other transactions documents as part of the 2023 Transaction. While Arbor Land might be affiliated with the Debtor, Arbor Land is not the same entity as the Debtor. As *JPMorgan Chase Bank* demonstrates, when a third-party is benefitted by a transaction, they are not unjustly enriched if they do not receive a direct benefit. *See id.* Here, FTF here conferred a benefit on the Debtor (in the form of the Loan Proceeds), but FTF has failed to plausibly allege that Arbor Land engaged in any "solicitation or inducement" of FTF as part of the 2023 Transaction. *Id.* Therefore, Arbor Land was not unjustly enriched as a matter of law because FTF's Amended Counterclaim fails to plausibly allege that Arbor Land itself received a measurable benefit from the 2023 Transaction.

74. As for the second element of unjust enrichment, a conscious acceptance of the measurable benefit conferred, FTF argues that a benefit was consciously accepted by Arbor Land "when the managing member of Arbor Land, Brian Macuga, Sr., executed the underlying documents representing that the Real Property was transferred from Arbor Land to the Debtor as inducement for the" Promissory Note and the Mortgage. FTF's Counterclaim Br. at 4. Again, FTF's argument is undermined by the fact that Brian Macuga, Sr., and Tisha Macuga signed the relevant 2023 Transaction documents on behalf of the Debtor, not Arbor Land. *See* Amended Counterclaim

Ex. A, B, C, D, E & F. Since Arbor Land did not sign the documents, FTF's arguments that Arbor Land consciously accepted a benefit fails.

75. The third element of unjust enrichment is that the alleged benefit was not conferred on Arbor Land officiously or gratuitously, and the fourth element is a legal or equitable obligation on the part of the Arbor Land to account for the benefits conferred. *See JPMorgan Chase Bank*, 750 S.E.2d at 559. Neither party argued that the alleged benefit was conferred officiously or gratuitously because FTF agreed to the 2023 Transaction and wired the Loan Proceeds to the Debtor "in reliance and in exchange for the promise that the Real Property would be transferred from Arbor Land to the Debtor." FTF's Counterclaim Br. at 4. Likewise, the Debtor had a contractual obligation to pay FTF back for the Promissory Note. *See* Amended Counterclaim Ex. D. Yet, both elements require a measurable benefit to have been conferred to Arbor Land in the first place. That did not happen here.

76. In conclusion, FTF's unjust enrichment claim fails as a matter of law because FTF has failed to plausibly allege that Arbor Land itself received a measurable benefit from the 2023 Transaction. As a result, the unjust enrichment claim cannot serve as the basis for FTF's assertion that it was a creditor of Arbor Land at the time of the 2023 Transaction. Furthermore, FTF also failed to plausibly allege any claim of negligent misrepresentation against Arbor Land as a matter of law because FTF was not justified in its reliance on Arbor Land's alleged "statements." *See* FTF's Counterclaim Br. at 4. Therefore, the first count in FTF's Amended Counterclaim alleging that the Trustee was a beneficiary of a fraudulent transfer pursuant to North Carolina General

Statute § 39-23.5(a) fails because FTF has failed to plead a claim that arose prior to the Trustee's Post-Petition Real Property Transfer.[30]

**ii. <u>Count II: Fraudulent Transfer Pursuant to North Carolina General Statute § 39-23.5(b).</u>**

77. The second count in FTF's Amended Counterclaim asserts that the Trustee's Post-Petition Real Property Transfer was fraudulent because the Trustee was an insider who was "standing in the shoes of the Debtor" pursuant to North Carolina General Statute § 39-23.5(b). FTF's Counterclaim Br. at 2. To establish a fraudulent transfer claim under North Carolina General Statute § 39-23.5(b) for the Trustee's Post-Petition Real Property Transfer, FTF must establish: (1) FTF held a claim against Arbor Land that arose before the transfer to the Trustee was made, (2) the transfer was made to an insider for an antecedent debt, (3) Arbor Land was insolvent at that time, and (4) the insider recipient had reasonable cause to believe Arbor Land was insolvent. N.C. GEN. STAT. § 39-23.5(b). FTF's Amended Counterclaim described Mr. Brian Macuga's "common ownership" of the Debtor and Arbor Land, both of which were in the "business of real estate development[,]" as sufficient to demonstrate that the Debtor, and thus the Trustee,[31] were both insiders of Arbor Land. Amended Counterclaim ¶¶ 60–63.

78. As to the first element for a fraudulent transfer claim under North Carolina General Statute § 39-23.5(b), the same creditor status analysis from the first count of the Amended Counterclaim applies. FTF must have had a claim against Arbor Land at the time of the Trustee's Post-Petition Real Property Transfer. However as discussed herein, FTF's claims of negligent

[30] The Trustee also asserts that FTF only made "conclusory allegations" in the Amended Counterclaim about the insolvency status of Arbor Land at the time of the Trustee's Post-Petition Real Property Transfer and therefore, has failed to sufficiently plead all required elements of North Carolina General Statute § 39-23.5(a). *See* Trustee's Counterclaim Br. at 11.

[31] "The Trustee stands in the shoes of the Debtor, including with its relationship to Arbor Land." Amended Counterclaim ¶ 62.

misrepresentation and unjust enrichment against Arbor Land both fail as a matter of law. Therefore, FTF was not a creditor of Arbor Land prior to the Trustee's Post-Petition Real Property Transfer. The second count of the Amended Counterclaim under section North Carolina General Statute § 39-23.5(b) fails on this alone.

79. Even though the second count of the Amended Counterclaim fails on the first element of fraudulent transfer under North Carolina General Statute § 39-23.5(b), the Court will proceed with an analysis of the other elements in the interest of addressing all the parties' substantive arguments. Before addressing the second element–whether Arbor Land was an insider of the Debtor–the Court will quickly address the third and fourth elements of this fraudulent transfer cause of action. The third element is whether "Arbor Land was insolvent at the time of the" Trustee's Post-Petition Real Property Transfer "or became insolvent because of the" Trustee's Post-Petition Real Property Transfer. Amended Counterclaim ¶¶ 9, 67. The fourth element is whether the insider recipient had reasonable cause to believe Arbor Land was insolvent. Amended Counterclaim ¶¶ 69, 70. While the Trustee claims that FTF has failed to adequately plead Arbor Land's insolvency with sufficient facts, thereby failing to satisfy the third or fourth elements, the Court need not address those two elements at this time because FTF's argument fails on other elements of North Carolina General Statute § 39-23.5(b).

80. Turning back to the second element of fraudulent transfer pursuant to North Carolina General Statute § 39-23.5(b), FTF alleges that the "Debtor and, by extension, the Trustee are insiders of Arbor Land because of the common ownership" of the Debtor and Arbor Land. Amended Counterclaim ¶ 63. Under North Carolina's implementation of the UVTA, an "insider" of a corporation is a "person in control of the debtor"[32] or "an affiliate, or an insider of an affiliate

[32] N.C. GEN. STAT. § 39-23.1(7)(b)(3).

as if the affiliate were the debtor."[33] The drafters of the UVTA, the National Conference of Commissioners on Uniform State Laws, specified that "the definition [of insider] is not exclusive, and the statutory list is merely exemplary." UNIF. VOIDABLE TRANSACTIONS ACT § 1(8) cmt. 8, at 12 (Annual Conference of the National Conference of Commissioners on Uniform State Laws in its One-Hundred-and-Twenty-Third Year, July 11-17, 2014). While North Carolina state courts have not directly interpreted either phrase in the corporate context, at least one federal district court in North Carolina has held that a person[34] is in "in control of the debtor"[35] if that person owns a majority of the equity. *See Andrew v. United States*, 91 F. Supp. 3d 739, 747 (M.D.N.C. 2015) (owning sixteen of twenty-four shares of a company, GNC, was sufficient to be classified as "'insiders' of GNC"). Likewise, United States Court for the Western District of North Carolina found trusts, which are categorized as a person under North Carolina General Statute § 39-23.1(9), to be an "an affiliate, or an insider of an affiliate" of a corporate entity when the beneficiaries of the trusts were also the equity owners of the corporate entity. *See Philips Med. Sys. v. Tec Holdings, Inc.*, No. 3:19-CV-373-MOC-DCK, 2022 WL 10208557, at *11 (W.D.N.C. Oct. 17, 2022) (categorizing trusts as insiders in a corporate entity when the beneficiaries of the trusts "wholly owned and controlled [the corporate entity] at the time they directed its transfers to the [trusts], in which they are named beneficiaries").[36] In *Philips*, the court reasoned that the trusts counted as

[33] N.C. GEN. STAT. § 39-23.1(7)(d).
[34] "Person" is broadly defined in North Carolina's UVTA to include "[a]n individual, partnership, corporation, association, organization, government or governmental subdivision or agency, business trust, estate, trust, or any other legal or commercial entity." N.C. GEN. STAT. § 39-23.1(9).
[35] For an example of a North Carolina court declining to interpret the definition of "insider" under North Carolina General Statute § 39-23.1(7), see *Fischer Inv. Cap., Inc. v. Catawba Dev. Corp.*, 689 S.E.2d 143, 145, 154 (N.C. Ct. App. 2009) ("Given that [Defendant] Ridgeline's status as an 'insider' is not critical to the viability of Plaintiff's attempt to allege a claim . . . , we express no opinion at this time as to whether Plaintiff's allegations, if supported by sufficient evidence, would permit a finding that the transfer of the Grovestone Property from Defendant Catawba to Defendant Ridgeline would constitute a transfer to an 'insider'" considering Defendant Catawba and Defendant Ridgeline were both controlled by the same individual.).In *Fischer*, the North Carolina Court of Appeals declined to define "insider" and determine a defendant's insider status and instead chose to decide the case on other grounds. *Id.*
[36] In its analysis, the court cited to North Carolina General Statute § 39-23.1(7)(b) for the proposition that "if debtor is a corporation, insiders include directors, officers, persons in control of the corporation, and relatives of them." *Id.*

insiders in the corporate entity because of the control that their beneficiaries held over the corporate entity. *Id.* Thus, when one party controls two entities, it follows that each entity may be categorized as an "insider" of the other due to the common control.[37]

81. In response to FTF's original Answer and Counterclaim, the Dismissal Order found that FTF did "not plead facts showing common control between Arbor Land and the Debtor[,]" and that the Defendant failed to "identify[] who those principals are, what control each exercised, or how any such control extends derivatively to the Trustee." Dismissal Order at 10. FTF's Amended Counterclaim added specific references to Mr. Macuga, and FTF believes that Mr. Macuga's insider status with both the Debtor and Arbor Land imbues Arbor Land with the status of an insider of the Debtor. *See* Amended Counterclaim ¶¶ 10, 11, 60, 63; Trustee's Counterclaim Br. at 6–7. In contrast, the Trustee asserts that North Carolina General Statute § 39-23.1(8)(d)(4) is a narrowly defined list that prevents the equity owners of a corporate entity from being defined as an insider of another corporate entity under North Carolina General Statute § 39-23.1(8)(d)(4). *See* FTF's Counterclaim Br. at 9.

82. The Court concurs with the FTF's interpretation of "insider" and adopts the reasoning in *Philips*. *See* 2022 WL 10208557, at *11. The Court adopts the broader definition of insider because the term's definition in N.C. GEN. STAT. § 39-23.1(7) is an expansive list segmented by individuals, corporations, and partnerships that was not designed to be "exclusive." UNIF. VOIDABLE TRANSACTIONS ACT § 1(8) cmt. 8, at 12. Rather, "the statutory list is merely exemplary." *Id.* Under FTF's interpretation of "insider", Arbor Land is an "an affiliate" of the

---

at *11; *see also* Uniform Law Comment to N.C. GEN. STAT. § 39-23.1 ("[A] trust may be found to be an 'insider' of a beneficiary.").

[37] The United States District Court for the Western District of North Carolina also held that an individual was an "insider" when the individual "was *both* Grantor, as Trustee of [the] Trust, *and* Grantee in the transfer of the Subject Property." *See First Nat'l Ins. Co. of Am. v. Livesay*, No. 1:17 CV 86, 2018 WL 934930, at *5 (W.D.N.C. Jan. 16, 2018) (emphasis in original), *report and recommendation adopted,* No. 1:17-CV-00086-MR-DLH, 2018 WL 934832 (W.D.N.C. Feb. 16, 2018).

Debtor because Brian Macuga, Sr. is the "sole member-manager" of both corporate entities. N.C. GEN. STAT. § 39-23.1(7)(d); *see* Amended Counterclaim ¶¶ 10, 11. Likewise, Mr. Macuga is an "an insider of an affiliate" at both corporate entities. *Id.*

83. Irrespective of the statutory interpretation of the term "insider," FTF still fails to show "how the Trustee, as a court-appointed fiduciary administering the bankruptcy estate, could qualify as an insider of Arbor Land, a non-debtor affiliate." Dismissal Order at 10. The Trustee is distinct from the Debtor because the Trustee is "is a court-appointed fiduciary rather than a successor-in-interest standing in the Debtor's pre-petition shoes for all purposes." Dismissal Order at 10. Further, using the reasoning in *Philips* as to insider entities, once the Chapter 7 Trustee was appointed to administer the Debtor's estate, Arbor Land and the Debtor were no longer controlled by the same member-manager. Therefore, the Trustee is distinct from the Debtor and does *not* assume the "insider" status for these purposes. Furthermore, the purpose of North Carolina General Statute § 39-23 is to protect creditors from insider dealings,[38] and that concern is not present in the Trustee's Post-Petition Real Property Transfer. In fact, "[t]he chapter 7 process is premised on the appointment of a bankruptcy trustee to administer the estate *for the benefit of creditors*." *In re Javed*, 592 B.R. 615, 620–21 (Bankr. D. Md. 2018) (emphasis added) (citing 11 U.S.C. §§ 704, 323; *SunTrust Bank v. Matson* (*In re CHN Constr., LLC*), 531 B.R. 126, 130 (Bankr. E.D. Va. 2015) ("The trustee is a disinterested party who serves in a fiduciary capacity.")).

84. In addition to the trustee's role in protecting the rights of creditors, "[a] trustee is generally required to be a disinterested person." *In re Barkany*, 542 B.R. 699, 711 (Bankr. E.D.N.Y.

[38] "To obtain relief under Section 39-23.4(a)(1) of the NCUVTA, a plaintiff must prove that (1) it is now or was a creditor of the debtor at the time of the transfer; (2) the debtor made a transfer under the NCUVTA; and (3) the debtor made the transfer with actual intent to hinder, defraud, or delay its creditors." *Philips Med. Sys.*, 2022 WL 10208557, at *10 (citing *Hoch v. Hoch* (*In re Hoch*), Bankr. LEXIS 181, at *17, 2018 WL 583110 (Bankr. E.D.N.C. Jan. 25, 2018)).

2015).[39] A disinterested person is defined as a person who "'is not a creditor, an equity security holder, or an insider.'" *Id.* (quoting 11 U.S.C. § 101(14)). The Chapter 7 trustee is tasked with protecting the rights of creditors and is required to be a disinterested party, and as required, the Trustee in this case is a disinterested party. The Trustee exerts control over the Debtor's estate, not over Arbor Land, and does not assume the Debtor's insider status in Arbor Land. The second count in FTF''s Amended Counterclaim alleging that the Trustee's Post-Petition Real Property Transfer was fraudulent because the Trustee was an insider pursuant to North Carolina General Statute § 39-23.5(b) then also fails because FTF has failed to establish that the Trustee was an insider of Arbor Land and has only made conclusory statements regarding Arbor Land's alleged insolvency at the time of the Trustee's Post-Petition Real Property Transfer.

**iii. <u>Count III: Recovery of Fraudulent Transfer Pursuant to North Carolina General Statute §§ 39-23.7 and 39-23.8.</u>**

85. The third count of the Amended Counterclaim asserts that FTF, under North Carolina General Statute § 39-23.7, "is entitled to a judgment against the Plaintiff avoiding the transfer of the Real Property[,]" or "[a]lternatively, under N.C. Gen. Stat. § 39-23.8, FTF is entitled to a judgment against the Trustee for the value of the Real Property" with respect to the Trustee's Post-Petition Real Property Transfer. Amended Counterclaim ¶¶ 74–75. As the Dismissal Order previously indicated, "seeking recovery under §§ 39-23.7 and 39-23.8, does not stand independently; it is a remedial provision that becomes available only once a transfer has first been avoided under Count I or Count II." Dismissal Order at 7. Because the Court finds dismissal of the

[39] "Section 701(a) of the Bankruptcy Code, which governs the appointment of an interim chapter 7 trustee, 11 U.S.C. § 701(a), and section 1104(b) of the Bankruptcy Code, which governs the election of a chapter 11 trustee, 11 U.S.C. § 1104(b), both require that the trustee appointed or elected pursuant to those provisions be a 'disinterested person,' as that term is defined in section 101(14) of the Bankruptcy Code." *Id.*

first and second counts appropriate at this time, the Court also dismisses the third count in FTF's Amended Counterclaim due to its preconditional nature.

Therefore, this Court **GRANTS** the Trustee's Motion for Judgment on the Pleading and **GRANTS** the Trustee's Motion to Dismiss Amended Counterclaim.

**IT IS SO ORDERED.**

**This Order has been signed electronically. The Judge's signature and Court's seal appear at the top of this Order.**

**United States Bankruptcy Court**